Ernest Ray WILLIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 69936.

Court of Criminal Appeals of Texas, En Banc.

June 7, 1989.

Rehearing Denied Jan. 17, 1990.

Kenneth D. Dehart, Alpine, Steve Woolard, Fort Stockton, for appellant.

J.W. Johnson, Dist. Atty., Fort Stockton, Jim W. James, Sp. Prosecutor, Bryan, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

BERCHELMANN, Judge.

Appellant, Ernest Ray Willis, was convicted of capital murder for the death of Elizabeth Beleu, who died in an intentionally set house fire. Tex.Penal Code Ann. § 19.03. The jury returned affirmative findings to the special issues submitted pursuant to Tex.Code Crim.Proc.Ann. art. 37.071(b). Appellant was thereafter sentenced to death.

Appellant raises six issues on appeal: 1) insufficiency of the evidence of appellant's guilt, 2) the admission of appellant's statements "which were neither the result of custodial interrogation, nor admissions by a party opponent," 3) prosecutorial misconduct, 4) improper testimony relating to a polygraph examination, 5) the State's closing argument which alluded to appellant's failure to testify, and 6) insufficiency of the evidence of appellant's future dangerousness. We will affirm.

Appellant's first point of error challenges the sufficiency of the evidence of his guilt. He does not dispute that there was a murder resulting from an arson. Instead, he limits his challenge to whether there is sufficient evidence that he started the fire. The standard of review for challenges to sufficiency claims is whether, viewed in the light most favorable to the judgment, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Carl-*

*sen v. State*, 654 S.W.2d 444, 448 (Tex.Cr. App.1983) (Opinion on Reh'g). The identical standard is applied to sufficiency challenges involving circumstantial evidence cases. *Carlsen*, 654 S.W.2d at 449. In assessing this standard, if there is a reasonable hypothesis other than guilt of the accused, then it cannot be said that the guilt has been shown beyond a reasonable doubt. *Butler v. State*, 769 S.W.2d 234 (Tex.Cr.App.1989); *Carlsen*, 654 S.W.2d at 450 (McCormick, J., concurring).

The record reflects that in the early morning hours of June 11, 1986, a fire of incendiary nature destroyed a home in Iraan which was then occupied by four persons.[1] Two women, Elizabeth Beleu and Gail Allison, died in the blaze. Their charred remains were found in separate bedrooms of the three bedroom home. Appellant's cousin, Billy Willis, testified that he escaped the fire when he, completely naked, jumped out of a bedroom window. Willis landed head first, and suffered a gash to his nose, a knot on his head, injuries to his legs and groin area, and he inhaled so much smoke that he coughed up black, "soot-like" phlegm for hours. Several witnesses testified to seeing Willis outside the burning house crying and coughing up black phlegm, clothed in only what appeared to be a blanket. Appellant was the fourth occupant of the house. He claimed to have been sleeping on a living room sofa when the fire was set. Appellant suffered no injuries. Several witnesses testified that appellant stood outside the burning house barefoot, but otherwise fully dressed, smoked cigarettes without respiratory distress,[2] and demonstrated no agitation over the fire or deaths of the two young women.

A variety of arson experts investigated the wreckage and testified at trial that the

1. The tenants of the house, Michael and Cheryl Robinson, were not present when the fire was set. After two severe arguments, both were arrested and subsequently spent the night in jail. The four occupants of the house were the Robinsons' guests. Appellant and his cousin were temporarily residing with the Robinsons. The deceased women were simply visiting the Robinsons for the day and drinking with the

Robinsons prior to the Robinsons' arrest. Apparently, the women had never met either appellant or appellant's cousin prior to this visit.

2. Billy Willis testified that for several hours after the fire he tried to smoke cigarettes, but was unable to do so because of respiratory problems.

burn patterns and degree of burning indicated that a flammable liquid was poured on the floor of the house throughout the living and dining areas, in front of the bedroom door jams, around the front and back door entrances, and beneath and on top of a sofa in the living area. It was upon this sofa that appellant claimed to have been sleeping when the fire was set. The burn patterns and degree of burning indicated that the fire originated in the living area of the house and quickly, if not simultaneously, ignited the dining room and kitchen. Thereafter, the fire spread to the bedrooms. One certified arson investigator testified that if anyone was sleeping on the sofa in the living area, as appellant contended to have been, he would have been burned. Another arson investigator stated that if appellant had been on the sofa when the fire was set, appellant would have been burned, perhaps fatally so.

Appellant's version of the events do not conform to the physical evidence relating to the fire. Appellant gave the authorities three statements on the day of the fire. Originally he stated that both he and his cousin slept in the living area of the house while the women slept in separate bedrooms. Appellant supposedly awoke to the smell of fire and ran throughout the house, amidst the blaze, trying to alert the other occupants of the house. Appellant told the authorities that he was unable to enter the bedrooms due to the fire and smoke, and instead ran out the front door of the house and ran around the outside breaking windows in an attempt to secure an escape route for those still inside. However, no broken glass was found inside the house. Broken glass was found *outside* the house, consistent with breakage from the pressure created by the fire. Appellant later stated that his cousin was asleep in bed with Gail Allison, one of the women who failed to escape the fire.[3] In all other respects, appellant's later statements were consistent with the original statement. Appellant did not testify at trial.

Deputy Sheriff Larry Jackson testified that he thoroughly examined appellant shortly after the fire and that appellant had no burn marks. Deputy Jackson smelt smoke on Billy Willis, appellant's cousin, but did not smell smoke on either appellant or appellant's clothing. Deputy Jackson purchased clothes for appellant and took appellant's clothing for evidence. An examination of appellant's clothing indicated no cinder marks, although there was a stain on the shoulder which was later identified as betadine, an antiseptic. Appellant told the authorities that he acquired the stain running through the burning house.

Approximately a day after the fire, Deputy Jackson was washing out the house with a garden hose found on the premises. The front portion of the hose had been cut off. Deputy Jackson learned from the tenant of the house that this was a newly purchased garden hose which was previously intact. Later, Deputy Jackson found a smaller portion of the garden hose which reeked with the smell of gasoline. A trace analysis of the smaller portion of the hose indicated the presence of gasoline. The Department of Public Safety crime lab detected unknown volatile components on appellant's pants through gas chromatograph testing. However, no known accelerant was positively identified on the pants.

Several witnesses testified that the day of the fire appellant had no burn marks, no singed clothing, and no singed hair. However, two days after the fire, appellant demonstrated for Sheriff Bruce Wilson a "very bad" burn mark on appellant's shoulder, which appellant claimed to have incurred in the fire. Several witnesses, including Sheriff Wilson, stated that appellant had no such injury the day of the arson. Specifically, Sheriff Wilson testified that he personally examined appellant the day of the fire and that there was "no way" he could have overlooked the burn mark on appellant's shoulder. Additionally, the doctor who examined appellant and

---

**3.** Willis, appellant's cousin, originally told the police that he and appellant were sleeping in the living room. However, Willis recanted this statement and testified that he was in bed with Allison. When questioned why he changed his story, Willis expressed concern about damaging Allson's reputation.

appellant's cousin within hours of the fire testified that appellant had no respiratory problems and did not complain of any injuries.

Challenging the sufficiency of the evidence, appellant argues that the evidence raises reasonable hypotheses other than appellant's guilt, thus warranting an acquittal. See, for example, *Butler*, 769 S.W.2d at 237. He specifically contends that it is reasonable to conclude that either of the deceased women set the fire in order to commit suicide, or that appellant's cousin set the fire. However, appellant's version of events surrounding the arson is wholly incompatible with any of these theories. Because an accelerant was poured beneath and on top of the sofa upon which appellant claimed to have been sleeping, and because the fire was set in the room where the sofa was located, it is inconceivable that either of the other three occupants started the fire without seriously burning or killing appellant. Moreover, appellant's statement that he ran barefoot throughout the burning house is implausible. Several witnesses testified that appellant did not appear "tender footed" after the fire. It defies both logic and common sense that appellant could run barefoot throughout a house engulfed in flames and across floors doused with a flammable liquid and neither burn any portion of his clothes or body, nor suffer respiratory distress, nor singe his hair, nor smell of even the slightest hint of smoke. Likewise, appellant's claim that once outside he broke all the windows in order to assist those remaining inside is inconsistent with the fact that all the broken glass was found outside the house.

These facts, as viewed in the light most favorable to the verdict, are sufficient for a rational trier of fact to have concluded beyond a reasonable doubt that appellant is guilty of the instant offense. *Splawn v. State*, 162 Tex.Crim. 197, 283 S.W.2d 66 (1955); *Taylor v. State*, 735 S.W.2d 930 (Tex.App.—Dallas 1987). Therefore, appellant's first point of error is overruled.

■ Appellant's second point of error alleges that "the trial court erred in admitting the verbal statements of appellant which were neither the result of custodial interrogation, nor admissions by a party opponent." Appellant complains of the admission of his three statements made the day of the fire. As set forth previously, appellant stated that he slept on the sofa, awoke to a house engulfed in flames, ran throughout but was unable to go to the bedrooms, eventually ran outside and broke the windows. With the one exception regarding where his cousin slept, appellant's three statements were consistent. Appellant's first two statements were given to Deputy Larry Jackson at the scene of the offense. Appellant's third statement, given after appellant received his *Miranda*[4] warnings, was tape recorded by Deputy Jackson several hours after the fire. To make the third statement, appellant voluntarily went to the Sheriff's Department. At trial appellant objected to the first two statements as containing hearsay and because they were custodial interrogations not being used for impeachment purposes. However, appellant's counsel specifically stated he had "no objection" to the admission of the recorded third statement. Ranger Roger Colemen also testified to appellant's statements made at the scene of the offense. Appellant objected to Ranger Coleman's testimony because the statements were not *res gestae* of the offense and because they constituted custodial interrogation not in compliance with Tex. Code Crim.Proc.Ann. art. 38.22 Sec. 3.[5]

In response, the State argues that appellant failed to preserve error because the objections at trial do not comport with the ground asserted on appeal. It is well established that a point of error on appeal must correspond to the precise objection made in the trial court. *Thomas v. State*, 723 S.W.2d 696, 700 (Tex.Cr.App.1986);

**4.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**5.** Art. 38.22 Sec. 3, Tex.Code.Crim.Proc.Ann. precludes admission of oral statements by an accused made as a result of custodial interrogation unless the statement is electronically recorded in compliance with specific guidelines.

*Hodge v. State,* 631 S.W.2d 754, 757 (Tex. Cr.App.1982); *Williams v. State,* 549 S.W.2d 183, 187 (Tex.Cr.App.1977). Appellant's complaint on appeal that the statements were not "admissions by a party opponent" sufficiently corresponds to his hearsay objection raised at trial.[6]

However, as the State correctly notes, appellant failed to object to the introduction of the recorded third statement. Appellant readily admits that the third statement contains the same information as was contained in appellant's prior two statements. In *Brown v. State,* 757 S.W.2d 739, 741 (Tex.Cr.App.1988), this Court reiterated the rule regarding cumulative evidence.

> In *Anderson v. State,* 717 S.W.2d 622 (Tex.Cr.App.1986) the rule regarding such cumulative evidence was stated as follows: "Inadmissible evidence can be rendered harmless if other evidence at trial is admitted without objection and it proves the same fact that the inadmissible evidence sought to prove." *Id.* at 628. See also *East v. State,* 702 S.W.2d 606 (Tex.Cr.App.1985) and *Lichtenwalter v. State,* 554 S.W.2d 693 (Tex.Cr.App. 1977).

Any conceivable error was cured by the unobjected to admission of the recorded third statement. Appellant's second point of error is overruled.

▇ Appellant's third point of error contends that his trial was fundamentally unfair based upon prosecutorial misconduct. Specifically, he complains of the State's cross-examination of defense witness D. Michael Smith. Smith was a court-appointed arson investigator for appellant. He was employed, among other things, as a consultant with an engineering consulting company, and he had previous experience with arson investigation. Smith initially testified that he had a degree in mechanical engineering, but later testified that he was an engineer. Upon cross-examination,

Smith admitted that he was not a certified engineer. The prosecution pointed out to Smith that it was a violation of the Texas Engineering and Practices Act to call one's self an engineer without being licensed and registered pursuant to the provisions of the Act, art. 3271a § 1.2 V.A.C.S., and ultimately accused Smith of breaking the law by doing so. Appellant now argues that there is an exemption to the above-referenced requirement regarding registration and licensing, and that Smith may fall into the exemption where a person is an employee or a subordinate of a person holding a certificate of registration. Art. 3271a § 20(c).

With this, appellant concludes that his conviction was obtained through the use of false testimony. To support this assertion, appellant cites *Burkhalter v. State,* 493 S.W.2d 214 (Tex.Cr.App.1973) and *Losada v. State,* 721 S.W.2d 305 (Tex.Cr.App.1986). In *Burkhalter,* supra, we reversed a conviction where the jury was not permitted to hear evidence that an agreement existed between the State and the attorney of a crucial witness, a co-defendant, where the State promised not to prosecute the co-defendant if he would testify without claiming immunity. In *Losada,* supra, we rejected a defendant's contention that discrepancies in testimony were tantamount to the State's use of perjured testimony to acquire his conviction. Simply put, neither of these cases support appellant's assertion.

It is true that the State may not obtain a conviction through the use of perjured testimony. *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). However, we cannot characterize the prosecutor's cross-examination as injecting knowingly false testimony. Whether Smith, as senior vice-president of this consulting company, fell within the employee exception embodied within the Act is an item into

---

**6.** The gist of appellant's argument is that appellant *intended* these statements to be exculpatory in nature; therefore, they should not fall into the category of "not hearsay" provided by Rule 801(e)(2)(A) Tex.R.Crim.Evid. The rule classifies admissions by a party-opponent as not hearsay where the statement is offered against a party and is his own statement in either his individual or representative capacity. Appellant acknowledges that he can find no case law from this Court to support his novel interpretation of Rule 801(e)(2)(A), nor does he cite this Court to case law so interpreting the predecessor common law rule.

which appellant was free to delve on re-direct, but did not do so. Smith testified at length regarding the arson investigation, and his qualifications as an arson investigator were never in question. Appellant fails to demonstrate that the State used false testimony to obtain its conviction.[7]

◼ In his fourth point of error, appellant complains of the testimony of Michael Robinson, one of the tenants of the house, because Robinson alluded to the fact that several people took a polygraph examination. Prior to trial, the court granted appellant's motion in limine to prevent mention of the polygraph examination and agreed with appellant that the prosecutors should inform the witnesses not to make reference to the polygraph exam. Specifically appellant urges that the State violated the court's order by failing to inform Robinson to not mention the examination. At trial, the following exchange took place between the prosecutor and Michael Robinson.

[THE PROSECUTOR] Q. Where did they go after that?

[ROBINSON] A. Took them back to Odessa.

Q. You did?

A. (Witness nods head in the affirmative.)

Q. In one of your vehicles?

A. Yeah. Well, let's see, now. I don't know. Everybody went down—took them down for that polygraph test deal. I'm not real clear on the times, I'm really not. I don't know how many days was in between or whatnot.

Q. Okay. But did you take them to Odessa at some point in time, or do you recall?

A. Yeah. I took—we drove down for the polygraph and whatnot.

Q. Is that the last time that you saw (the appellant), when you took him to Odessa?

A. Yeah. The best I remember. I think that was it.

There was no other reference to the examination; the jury was never informed of the results of the test.

Appellant did not object to the testimony until after the witness concluded testifying. In a bill of exception made pursuant to appellant's belated objection, Robinson testified that one of the prosecutors did not warn him about mentioning the polygraph examination. As the State correctly points out, Robinson was never questioned about whether the other prosecutor who tried the case, or any other representative of the District Attorney's Office, spoke with Robinson regarding the proscription against mentioning the examination.

Moreover, the record reflects that appellant failed to register a timely and specific objection to the reference of the polygraph examination. Therefore, any error in the mere mention of the examination is waived. *Armstrong v. State*, 718 S.W.2d 686, 699 (Tex.Cr.App.1985). See also Rule 52, Tex. R.App.Pro. The granting of a motion in limine will not preserve error. *Gonzales v. State*, 685 S.W.2d 47, 50 (Tex.Cr.App.1985). Appellant's fourth point of error is overruled.

◼ Appellant's fifth point of error alleges that the prosecutor's closing argument at the punishment phase of trial improperly commented on appellant's failure to testify. There are four permissible areas of jury argument: 1) summation of the evidence, 2) reasonable deduction from the evidence, 3) answers to argument of opposing counsel, and 4) pleas for law enforcement. *Alejandro v. State*, 493 S.W.2d 230 (Tex.Cr.App.1973).

Appellant complains of the following statements:

My clients aren't in the courtroom today. They are dead. Understand that distinction. This guy has been able to sit in here and observe everyone that took the stand, look at all of you throughout this proceeding, and hear everything that has gone on. My clients are in their graves

---

**7.** San Antonio attorney William A. Brant presented an amicus curiae brief on behalf of appellant which likewise challenges the im-

peachment of Smith. We have reviewed the brief and find the contentions raised therein to be without merit.

right now because of what this Defendant did ...

\* \* \* \* \* \*

He didn't even help his cousin when he hung up in that window coming out to stop from hitting head first on the ground, ladies and gentlemen. He did nothing. He didn't even raise his little finger. And he showed no mercy or no remorse afterwards.

THE COURT: Mr. Johnson, your time is up.

[THE PROSECUTOR]: If you observed, he sat right here through this entire trial with this dead pan, insensitive, expressionless face—

[DEFENSE COUNSEL]: Your Honor, I'm going to object to the prosecutor continuing to argue after the Court has told him his time is up.

THE COURT: I will ask you to close.

[THE PROSECUTOR]: With his cold fish eyes on everybody and everything that has come in here, and he just merely stared and watched very impassively, very coldheartedly, much like he probably did that morning outside the fire when he watched and listened.

■■■ Appellant failed to object to the statements now raised on appeal. It is generally presumed that a failure to object to impermissible jury argument waives any error. *Romo v. State*, 631 S.W.2d 504 (Tex.Cr.App.1982). See also Rule 52(a) Tex.R.App.Pro. However, this does not end our inquiry. This court has created an exception to the waiver rule for cases in which the prosecutor's argument is so egregious that no instruction to disregard could possibly cure the harm. *Romo*, 631 S.W.2d at 505. That is, jury argument error will not be waived for failure to object where the argument is manifestly improper, or violates some mandatory statute, or injects some new fact harmful to the defendant's case. *Mathews v. State*, 635

S.W.2d 532, 539 (Tex.Cr.App.1982); *Walthall v. State*, 594 S.W.2d 74 (Tex.Cr.App. 1980). In making the determination of whether a statement is manifestly improper, harmful and prejudicial, courts are to look at the record as a whole. *Curtis v. State*, 640 S.W.2d 615 (Tex.Cr.App.1982); *Simpkins v. State*, 590 S.W.2d 129, 136 (Tex.Cr.App.1979).

■■■ With respect to the first above-referenced remark, we cannot agree with appellant that the statement, "[t]his guy has been able to sit in here and observe everyone that took the stand, look at all of you throughout this proceeding, and hear everything that has gone on," constitutes a comment upon appellant's failure to testify. It is clear from the context that the prosecutor's remark was juxtaposing appellant's presence with the absence of the deceased women. Appellant fails to cite any cases in which we have characterized a similar statement as an indirect comment on a defendant's failure to testify.

Next we turn to the prosecutor's second remark: "he sat here right through this entire trial with this deadpan, insensitive, and expressionless face ... with his cold fish eyes on every body ... and he just merely stared and watched very impassively, very coldheartedly, much like he probably did that morning outside the fire ..." Again, appellant contends that this statement amounts to an indirect comment upon his failure to testify.[8] See *Dickinson v. State*, 685 S.W.2d 320 (Tex.Cr.App.1984) (argument that "you haven't seen one iota of remorse, one iota of shame" characterized as an indirect comment), but cf. *Jones v. State*, 693 S.W.2d 406 (Tex.Cr.App.1985) (argument that "you haven't seen any remorse" *not* characterized as an indirect comment). Viewing the record as a whole, we hold that the statements were not so manifestly improper, harmful and unjust as to warrant a reversal. An instruction to disregard could have cured the harm. See

---

**8.** The prosecutor's argument is actually an impermissible comment upon appellant's nontestimonial demeanor. See *Good v. State*, 723 S.W.2d 734, 737 (Tex.Cr.App.1986). However, unlike the fact scenario in *Good*, the improper comment in the case at bar was made during the punishment phase. Additionally, we held in *Good* that when the trial court overruled Good's timely and specific objection, the court thereby implicitly placed "its imprimatur on the State's argument." *Id.*, 723 S.W.2d at 738.

*Bower v. State*, 769 S.W.2d 887 (Tex.Cr. App.1989) (instruction to disregard could cure harm where argument referred to defendant's lack of remorse and nontestimonial demeanor). As a result, appellant is not entitled to the *Romo* exception to the waiver rule. *Romo*, 631 S.W.2d at 505. Appellant's fifth point of error is overruled.

Last, appellant challenges the sufficiency of the evidence to support the jury's finding of future dangerousness. Tex.Code Crim.Proc.Ann. art. 37.071(b)(2). In the process of doing so, appellant challenges the validity of the admission of reputation testimony during the punishment phase of the trial. Despite the multifarious nature of this point of error, given the severity of the sentence imposed, we will address both components of the issue.

Deputy Sheriff Jackson and Ranger Coleman were the only witnesses at the punishment phase. Both testified that they spoke with individuals in several communities in which appellant had resided and that appellant's reputation for being peaceful and law-abiding in those communities was bad.

■ Hearsay is inherent in testimony regarding reputation. The testimony of a reputation witness must be based on discussion with others concerning the defendant, or on hearing others discuss the defendant's reputation, and not just on personal knowledge. *Jackson v. State*, 628 S.W.2d 446, 450 (Tex.Cr.App.1982). Additionally, reputation testimony cannot be based solely upon the offense for which the defendant is on trial; it must include a discussion of matters other than the instant offense. *Watson v. State*, 605 S.W.2d 877 (Tex.Cr.App.1979) (opinion on reh'g).

■ Essentially, appellant complains that Jackson and Coleman did not *personally* know appellant or where appellant resided, and therefore should have been precluded from testifying about appellant's reputation. In *Hubbard v. State*, 496 S.W.2d 924, 925 (Tex.Cr.App.1973), this Court entertained a similar challenge and held that an officer's testimony regarding reputation is permissible where the officer based the opinion on discussions with fellow officers and persons who lived in appellant's neighborhood. See also *Castillo v. State*, 739 S.W.2d 280, 292 (Tex.Cr.App. 1987). It is clear from the record that the witnesses spoke with numerous individuals from a variety of communities in which appellant had resided. Clearly, the testimony regarding appellant's reputation did not stem solely from the instant offense. There was no error in the admission of reputation testimony from either Deputy Sheriff Jackson or Ranger Coleman.

■ Finally, we turn to appellant's contention that the evidence was insufficient to support a finding of future dangerousness. In making such an assessment, we must view the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the elements of Tex.Code Crim.Proc. Ann. art. 37.071(b)(2) beyond a reasonable doubt. *Keeton v. State*, 724 S.W.2d 58, 61 (Tex.Cr.App.1987). Evidence adduced at both the guilt/innocence and punishment phases of trial can be used by the jury when considering future dangerousness. *Mitchell v. State*, 650 S.W.2d 801, 812 (Tex. Cr.App.1983). Additionally, this Court has repeatedly stated that the circumstances of the offense alone are enough to sustain an affirmative answer to the second special issue. *James v. State*, 772 S.W.2d 84, 90 (Tex.Cr.App.1989); *Moreno v. State*, 721 S.W.2d 295, 302 (Tex.Cr.App.1986); *O'Bryan v. State*, 591 S.W.2d 464, 480 (Tex.Cr.App.1979).

■ The facts of this crime demonstrate an utter disregard for human life; indeed, they depict a man so determined to murder the very people with whom he earlier socialized that he effectively sealed off their escape routes by pouring an accelerant on the door jams to their bedrooms and on the front and back doors to the house immediately before sending the house up in flames. Appellant succeeded in killing two women, and seriously endangered the life of his own cousin. When the fire fighters began to arrive, appellant did not volunteer

the information that two women were trapped inside the smoldering house. Instead, he impassively smoked cigarettes while watching the fire fighters battle the blaze.

Appellant argues that the crime is not particularly heinous because, for example, there is no evidence that he sexually molested the women before they were burned beyond recognition. We do not find this argument persuasive. Obviously, the jury did not regard this double murder to be substantially less egregious simply because there is no evidence of sexual assault. Moreover, the jury can consider the number of people killed in determining the likelihood of future dangerousness. *Moreno v. State*, 721 S.W.2d 295 (Tex.Cr.App.1986). We conclude that the nature of the offense is so extreme that a rational trier of fact could have reasonably answered the second special issue in the affirmative based solely on the facts of the offense.

Additionally, a prior criminal record may be probative of future dangerousness. *Keeton*, 724 S.W.2d at 61. Appellant's tape recorded statement indicated that appellant was convicted of a felony involving "immoral conduct" and that appellant had several driving while intoxicated convictions. Appellant's prior convictions could have contributed to the jury's determination of future dangerousness. In the same respect, unadjudicated offenses may constitute a basis for finding a defendant to be a continuing threat to society. *Mitchell*, 650 S.W.2d at 812. In the case at bar, there was repeated evidence adduced at the guilt/innocence phase, without objection, that appellant abused prescription drugs and marijuana. This, too, could have been a factor in the jury's determination.

The testimony of a defendant's reputation is probative of a likelihood to commit future acts of violence. *Cockrum v. State*, 758 S.W.2d 577, 593 (Tex.Cr.App.1988); *Ex parte Alexander*, 608 S.W.2d 928, 930 (Tex. Cr.App.1980). Here, two witnesses testified that appellant's reputation for being peaceful and law-abiding was bad in several communities. The jury could have used this evidence in reaching the determination of future dangerousness.

Last, we turn to the age of the defendant. We have held that a defendant's youth may militate against a finding of future dangerousness. *Barney v. State*, 698 S.W.2d 114 (Tex.Cr.App.1985). In the case at bar, appellant was forty years old at the time of the offense. Appellant's age, especially when coupled with his prior offenses and bad reputation in the communities in which he resided, is a factor the jury may have taken into consideration when answering "yes" to the second special issue. Appellant's final point of error is overruled.

Finding no reversible error, we affirm the judgment of the trial court.

DAVIS, CLINTON and DUNCAN, JJ., concur in the result.