Ferrer v. CTI 






NO. 10-90-153-CV

IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

          ESTEFANA I. FERRER,
                                                                                            Appellant
          v.

          CORSICANA TRANSMISSION, INC. DBA 
          OLIVER BROTHERS TRANSMISSION,
                                                                                            Appellee

* * * * * * * * * * * * *

 From 13th Judicial District Court
Navarro County, Texas
Trial Court #64-89

* * * * * * * * * * * * *

OPINION

* * * * * * *
          This is an appeal in a "slip and fall" case in which Estefana Ferrer sued Corsicana
Transmission, Inc. (CTI), alleging that because of its negligence she sustained damages for her
injuries in the amount of $45,472. The jury found Ferrer 100% negligent, thus exonerating CTI
from liablility. By three points of error, Ferrer claims that the court should have allowed Dr.
Fajardo, an expert witness, to testify at trial. We will overrule all points, affirm the judgment and
award CTI $1,918.50, an amount three times the total taxable costs, as damages against Ferrer for
a frivolous appeal. See Tex. R. App. P. 84.
          In all three points, Ferrer alleges that the court erred in refusing to allow the testimony of
Dr. Fajardo. In points one and two, this claim is based on her properly identifying Dr. Fajardo
as an expert witness pursuant to Rule 166b of the Rules of Civil Procedure. See Tex. R. Civ. P.
166b. In point two, her claim is based upon CTI's failure to offer any evidence to support its
objection to Dr. Fajardo's testimony. 
          Ferrer acknowledges that Dr. Fajardo was a medical expert and, that as the treating
physician, would have given medical testimony. Because (1) his testimony would have been
relevant only to damages, (2) the damage questions were submitted conditioned on a finding of
negligence by CTI, and (3) Ferrer has assigned no error to any issue on liability, we need not
determine whether the court erred in excluding Dr. Fajardo's testimony. See Ward v. Houston
& North Texas Motor Freight Lines, 308 S.W.2d 98, 100 (Tex. Civ. App.--Texarkana 1957, no
writ).
          Furthermore, because Ferrer did not perfect a bill of exceptions at trial, we have no way
of reviewing Dr. Fajardo's testimony to determine whether its exclusion was error. See id;
Swinney v. Winters, 532 S.W.2d 396, 402 (Tex. Civ. App.--San Antonio 1975, writ ref'd n.r.e.). 
Ferrer's points are overruled.
          By a cross-point, CTI asks us to award damages under Rule 84 of the Rules of Appellate
Procedure, on the ground that Ferrer took this appeal for delay and without sufficient cause. See
Tex. R. App. P. 84. In considering this point, we must review the case from Ferrer's point of
view and determine whether she had reasonable grounds to believe the case would be reversed. 
See Lewis v. Deaf Smith Elec. Co-op., Inc., 768 S.W.2d 511, 514 (Tex. App.--Amarillo 1989,
no writ). Clearly, the question of damages became moot when the jury found Ferrer 100%
negligent. She asserts no error on any matter other than the court's refusal to allow Dr. Fajardo
to testify, which testimony could only relate to the damage question. Also, she did not preserve
Dr. Fajardo's testimony for appellate review. Under these circumstances, we cannot ascertain
how Ferrer had any reasonable ground to believe that the judgment would be reversed, and thus
hold that she has taken this appeal for delay and without sufficient cause. See id. 
          We affirm the judgment of the trial court and sustain the cross-point. We award CTI
damages against Ferrer in the amount of $1,918.50, which is three times the amount of the total
taxable costs of this appeal. See Tex. R. App. P. 84.

                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings
          and Justice Vance 
Affirmed, damages awarded to Appellee
Opinion delivered and filed April 4, 1991 
Publish 



six times.
          Mathis testified, denying the allegations. He testified that after he and Evelyn separated,
he continued to give her money and paid off her "hot" checks. He stated that shortly after he quit
giving her money, the sexual abuse charges surfaced. Two of Evelyn's cousins testified for the
defense that Evelyn and W.M. had reputations for untruthfulness.
          Mathis' first point asserts that the court erred in overruling his objection to the State's 
misstatement of the law. During closing argument in the guilt-innocence stage of trial, the State
argued:
You can look at this board and you can see hot checks and names and dates. But
what does it boil down to? It boils down to [W.M.] and the defendant. And one of those
people is a liar, one person is a liar. And beyond a reasonable doubt, you must find that
liar is that man and that [W.M.] is telling the truth. If you think the defendant is innocent,
you have to believe what this man said, and you have to disbelieve everything that William
said.
Mathis objected that the argument was a misstatement of the law because the jurors "only have to
disbelieve that witness at a reasonable doubt." The court overruled the objection.
          Proper jury argument falls within one of the following categories: (1) a summary of the
evidence; (2) a reasonable deduction from the evidence; (3) an answer to the opponent's argument;
or (4) a plea for law enforcement. Harris v. State, 827 S.W.2d 949, 963 (Tex. Crim. App.), cert.
denied, 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992). Prosecutorial jury argument
which contains a statement of law contrary to the court's charge is improper. Ex parte Drinkert,
821 S.W.2d 953, 957 (Tex. Crim. App. 1991). When a court overrules an objection to improper
jury argument, error results and a harm analysis under Rule 81(b)(2) is required. Orona v. State,
791 S.W.2d 125, 129-30 (Tex. Crim. App. 1990). 
          The court's charge contained instructions that the burden of proof in criminal cases is on
the State and that all persons are presumed innocent and cannot be convicted unless each element
of the crime is proven beyond a reasonable doubt. It contained instructions that a defendant is
not required to prove his innocence or produce evidence and that the presumption of innocence
alone is enough to acquit unless proof of his guilt is proven beyond a reasonable doubt. If the jury
determined that the State failed in its burden, it was to acquit. The charge also contained the
required definitional instructions on "reasonable doubt."
          The State argues that its statements were a reasonable deduction from the evidence. It
asserts that the jury had heard conflicting stories—Mathis' and W.M.'s—and had to decide beyond
a reasonable doubt who was telling the truth. Mathis asserts that the argument in question "served
to shift the burden of proof from the State to the defense in proving innocence." To the extent that
the State's argument inferred that the jury must find beyond a reasonable doubt that W.M. was
lying in order to acquit, it is a misstatement of the law. The jury only had to believe that the State
in some respect had not proven every element of the crime beyond a reasonable doubt.
          Thus, assuming without deciding that the court erred in overruling the objection, we apply
the harm analysis of Rule 81(b)(2). Tex. R. App. P. 81(b)(2). We look to the probable impact
of the argument in light of the entire record, considering the nature and source of the error, the
degree the prosecutor emphasized the erroneous argument, probable collateral implications, the
weight a juror might have placed on the erroneous argument, and whether holding the improper
argument harmless would encourage the State to repeat it with impunity. Coble v. State, 871
S.W.2d 192, 206 (Tex. Crim. App. 1993), cert. denied, — U.S. —, 115 S.Ct. 101, 130 L.Ed.2d
50 (1994).
          The objectionable argument came early in the initial portion of the State's closing
argument. The prosecutor then discussed the concept of reasonable doubt, told the jury that the
charge included a reasonable-doubt instruction, and encouraged the jury to "read the definition." 
The prosecutor told the jury that it must "have a reasonable doubt" about W.M. to acquit Mathis
and then attacked the defensive theory that Evelyn had "planted" the story in W.M.'s head. 
          The objectionable argument was not repeated or emphasized by the State. The State
followed the argument with a proper discussion of reasonable doubt. The charge clearly instructed
the jury that the burden was on the State to prove Mathis' guilt beyond a reasonable doubt. Based
on the record, we conclude beyond a reasonable doubt that the improper argument did not
contribute to Mathis' conviction or punishment. Id.; Tex. R. App. P. 81(b)(2). We overrule point
one.
          Mathis' second point asserts that error resulted from the State's improper closing argument
which bolstered W.M.'s credibility. During his cross-examination of W.M., Mathis asked W.M.
if, prior to trial, he had discussed his testimony with the prosecutor. Mathis then asked, "Did the
therapist tell you how to testify in court, and what would happen, and what the procedures were?" 
On re-cross, Mathis asked W.M., "[D]id you discuss the testimony you just gave when we were
on a little break here with [the prosecutor]?" W.M. responded, "Not all of that."
          In the initial portion of the State's closing argument, the prosecutor stated: 
And each occasion that [W.M.] testified, the defense attorney said, now, [W.M.],
right before you testified, did the District Attorney talk to you out in the hallway? And
the answer to that is, yes. I can guarantee you we talk to children before they testify. 
When an eleven-year-old boy walks in this courtroom and has to tell the twelve of you that
man put his penis in my mouth, we are going to tell that kid what questions he is going to
hear, and we don't apologize for that.
 
But do not misinterpret that. That witness was not coached. He has not been put
up to this story. We prepare children to come into court. You cannot prepare a child for
the type of abuse that he suffered at this man's hands. But when a boy has to come into
this courtroom and relive that trauma, you're damn right we prepare the witness for that. 
And we don't apologize for it.
          In his closing argument, Mathis stated, "If you believe [the State], then every kid that ever
made an allegation, you've got to believe him. Ladies and gentlemen, use your reason and
common sense. You know that's not true." He argued the possibility that W.M. had been
pressured by Evelyn to lie about the assault and then a "snowball" effect had occurred—Evelyn
had taken him to the police, the police had turned the matter over to the district attorney, and a
therapist had been called in. Mathis argued that W.M. could not now retract the story.
          Mathis then argued about the State's recalling W.M. in rebuttal: 
The only thing the State could do in rebuttal was appeal to your emotions. They
brought [W.M.] back to state James Mathis had assaulted him. And again, he went
through his testimony just like he rehearsed with Susan Kelly, and Mr. Frederick and the
District Attorney's Office, and that therapist.
 
Did you hear some of the big words that he said? Did that sound like the words
that come from an eleven-year-old? And I think Mr. Frederick, he tried to neutralize it,
but he hit the right word when he was -- [W.M.] was a very coached witness.


 . . .
 
What I meant was, the word "coached." He wants to say [W.M. was] not coached. 
And ladies and gentlemen, I think when you watch his demeanor and the words he said,
reason and common sense and those big words he used, he was coached. Now, he can say
not coached, and I can say coached. You are the sole judge of the credibility of the
witnesses and the weight to be given to that evidence.
          In its final portion of closing argument, the State responded:
Big words, remember them? I think they are the most important words you heard
and they are, "suck this." And that came right out of his mouth. . . . And yeah, it's been
a long time. And I don't know about ejaculation and erection and all that. I'm sure now
that he's eleven, he's learned these words. But he will never forget "suck this."
 
I don't believe that Mr. Frederick is trying to get it across -- and I hope not -- that
we believe every child that makes an allegation, and that we run up to the Grand Jury just
as soon as they say something because, gosh, a child wouldn't lie about something like
this. A child wouldn't do that. Oh, come on, they do.
 
But when I got this case, I started sifting through, what's this kid's motive? No,
I don't have to prove motive. He doesn't have to prove motive. But when it comes to
credibility, then my job is to figure out if they are telling the truth, your job is to figure
out if they are telling the truth. You think about motive. Why, why, why. . . .
          The State continued its argument:
I assure you, it is never too late to tell the truth. And I don't know what kind of
person you think I am, but I hope you don't think that I would ever put a child up to lie. 
And I don't know what kind of person you thought [the therapist] was. But he's been in
her office every week since July. I can't tell you how happy we would all be if we found
out that little boy was never molested. Nobody would be angry with him. We would love
him. . . .
 
Yes, children lie, and children -- don't think for one minute that I have not had a
child make up that somebody sexually abused them. . . . But we are talking about [W.M.],
here. We are talking about what you are seeing. We are talking about the facts in this
case, and why is he lying? What possible motive does he have? . . .
 
You know, we keep telling our kids, just say no. . . . Just cry out. It is okay. 
You are not going to get into trouble. Just cry out. And I guarantee you that's what
[W.M.] did, he cried out.
Mathis did not object to any of the argument of which he now complains. 
          As stated previously, proper jury argument falls within one of the following categories: (1)
a summary of the evidence; (2) a reasonable deduction from the evidence; (3) an answer to the
opponent's argument; or (4) a plea for law enforcement. Harris, 827 S.W.2d at 963. The failure
to object to improper jury argument waives any error, unless the argument is so egregious that no
instruction to disregard could possibly cure it. Willis v. State, 785 S.W.2d 378, 385 (Tex. Crim.
App. 1989), cert. denied, 498 U.S. 908, 111 S.Ct. 279, 112 L.Ed.2d 234 (1990). Error in jury
argument is not waived by a failure to object where the argument is manifestly improper, violates
some mandatory statute, or injects some new fact harmful to the defendant's case. Id. In
determining whether a statement is manifestly improper, harmful, and prejudicial, we look at the
record as a whole. Id.
          It is error to argue that the jury should believe a witness simply because the prosecution
does. Gardner v. State, 730 S.W.2d 675, 698 (Tex. Crim. App.), cert. denied, 484 U.S. 905,
108 S.Ct. 248, 98 L.Ed.2d 206 (1987). However, the State asserts that its argument was in
response to Mathis' cross-examination of W.M., which implied that the child had been coached
by both his therapist and the prosecution. 
          The State opened its argument defending itself from the perceived implication that it had
coached W.M. Mathis did not object. Rather, he argued that W.M. had "rehearsed" his
testimony with the prosecution and had been coached. He argued that W.M.'s use of "big words"
was evidence of this coaching and urged the jury to consider that in assessing W.M.'s credibility. 
He argued that, under the State's theory, all children must be believed. Furthermore, Mathis
questioned W.M.'s credibility using a "snowball" analogy.
          In its closing argument, the State responded to Mathis' arguments about W.M.'s use of
"big words." It disavowed Mathis' assertion that the State's theory was that all children must be
believed. The State also responded to Mathis' "snowball" theory, arguing that W.M. had no
motive to lie about the assault. 
          Portions of the argument of which Mathis now complains were within the realm of proper
jury argument because they were in response to his own closing arguments. Harris, 827 S.W.2d
at 963. There were no objections to any otherwise improper portions of the argument. Having
looked at the record as a whole, although we do not approve of them, we cannot say that the
remaining portions were so egregious that an instruction to disregard could not have cured any
harm. Willis, 785 S.W.2d at 385. 
          We overrule point two. We affirm the judgment.
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Justice Cummings,
          Justice Vance, and
          Chief Justice McDonald (Retired)
Affirmed
Opinion delivered and filed May 15, 1996
Do not publish