NUMBER 13-03-404-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


WHITNEY GERRARD CARSON, Appellant,


v.


 

THE STATE OF TEXAS, Appellee.

 


On appeal from the 208th District Court of Harris County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Hinojosa and Yañez 


Memorandum Opinion by Justice Yañez


 

 A jury convicted appellant, Whitney Gerrard Carson, of murder and sentenced him
to fifty years' imprisonment. (1) In five issues, appellant contends the trial court erred in (1)
failing to grant a mistrial sua sponte regarding a comment made by the prosecutor, (2)
granting the State's hearsay objection to certain testimony by appellant, (3) denying his
motions for mistrial based on improper cross-examination by the State, (4) denying his
motions for mistrial based on the State's alleged improper argument, and (5) denying his
motion for mistrial based on an outburst by a State witness. We affirm. 

Background 


 The jury found appellant guilty of murdering his estranged wife, Jocelyn Carson
("Jocelyn"). A week before her death, Jocelyn left appellant and along with her children, 
moved in with her parents. Approximately a month before her death, Jocelyn became
friends with a lesbian co-worker, Natalie Godine. On August 31, 2002, appellant went to
Jocelyn's workplace and spoke to her and Ms. Godine. Appellant testified that he asked
Ms. Godine to leave his family alone. 

 On the evening of the following day, September 1, 2002, Jocelyn and Ms. Godine
went to a club with two male friends. When they left the club around 3:00 a.m., they
encountered appellant in the parking lot. Ms. Godine testified appellant spoke briefly with
Jocelyn at the rear of Jocelyn's car. Ms. Godine testified that she then saw appellant shoot
Jocelyn once in the stomach, and twice more in the head. Michael Knighton, a family
friend of Jocelyn's who was with appellant, also testified that he saw appellant shoot
Jocelyn once, then twice more. Appellant did not dispute that he shot his wife, but testified
that the gun accidentally discharged twice. After the shooting, appellant went to his
mother's house, where his children were. He testified that he wanted to kiss his children
good-bye and kill himself. Appellant also testified that he told his mother, "I killed my wife,
I killed my wife." Appellant then shot himself in the stomach and was taken to the hospital. 

Standard of Review and Applicable Law 


 A defendant's complaint to the trial court may take three forms: (1) a timely, specific
objection; (2) a request for an instruction to disregard; and (3) a motion for a mistrial. (2) An
objection serves as a preemptive measure, informing the judge and opposing counsel of
the potential for error. (3) An instruction to disregard attempts to cure any harm or prejudice
resulting from events that have already occurred. (4) A grant of a motion for mistrial should
be reserved for those cases in which an objection could not have prevented, and an
instruction to disregard could not cure, the prejudice stemming from an event at trial- i.e.,
where an instruction would not leave the jury in an acceptable state to continue the trial. (5)

 The traditional and preferred procedure for a party to voice its complaint has been
to seek these judicial remedies in sequence: (1) object when it is possible; (2) request an
instruction to disregard if the prejudicial event has occurred; and (3) move for a mistrial if
a party thinks an instruction to disregard was not sufficient. (6) However, this sequence is not
essential to preserve complaints for appellate review. (7) The essential requirement is a
timely, specific request that the trial court refuses. (8) Failure to request an instruction to
disregard forfeits appellate review in circumstances where such an instruction could have
cured any harm or prejudice. (9) When a party's first action is to move for mistrial, the scope
of appellate review is limited to the question of whether the trial court erred in not taking
the most serious action of ending the trial; in other words, an event that could have been
prevented by timely objection or cured by instruction to the jury will not lead an appellate
court to reverse a judgment on an appeal by the party who did not request these lesser
remedies in the trial court. (10) 

 We review a trial court's denial of a motion for mistrial for abuse of discretion. (11) The
asking of an improper question, by itself, will seldom call for a mistrial. (12) When the trial
court sustains an objection and instructs the jury to disregard but denies a defendant's
motion for mistrial, the issue is whether the trial court abused its discretion by denying the
mistrial. (13) The determination of whether such an abuse of discretion occurred is made by
examining (1) the severity of the alleged misconduct, (2) the curative measures that were
taken, and (3) the certainty of conviction absent the improper question. (14) Otherwise, an
instruction to disregard generally suffices. (15) Generally, we presume the jury follows the trial
court's instructions and that a limiting instruction cures any harm. (16) To preserve error to
an improper question, an objection must be made each time the improper question occurs,
and when the same evidence comes in elsewhere without objection, nothing is preserved
for appellate review. (17)

 The standard of review for improper jury argument is to review the record in its
entirety to determine whether any erroneous statements were made, and if so, whether
they were so prejudicial as to deprive the appellant of a fair and impartial trial. (18) The failure
to object to a jury argument forfeits the right to complain about the argument on appeal. (19)

 Analysis 


 In his first issue, appellant contends the trial court erred in failing to grant a mistrial
sua sponte when the prosecutor made an allegedly improper objection during appellant's
closing argument. Specifically, appellant objects to the following statement by the
prosecutor:

[Appellant's counsel]: . . . Who was the aggressor? To rob people you have
to have an aggressive person--


[Prosecutor]: No, you don't, Judge. That's a lie and I'm going to object, that's
outside-


[Appellant's counsel]: You have to have--


[Prosecutor]: It's outside the record. 


The trial court immediately excused the jury and admonished the prosecutor that "saying
'That's a lie' is not an appropriate objection." When the jury returned, the following
exchange occurred:

[Appellant's counsel]: Thank you, Your Honor. And I would just, for the
record, like to object to the prosecutor's outburst before the jury was taken
out.


[Court]: All right. We will deal with that at the closing of both arguments, if
that's all right with you?


[Appellant's counsel]: That's fine, Judge. Thank you. 


At the conclusion of closing argument, appellant did not raise the issue again. 

 

 We agree with the State that the trial court had no duty to sua sponte declare a
mistrial in these circumstances. (20) By failing to object, request an instruction to disregard,
and request a mistrial, appellant failed to preserve the issue for review. (21) We overrule
appellant's first issue. 

 In his second issue, appellant contends the trial court erred when it sustained the
State's hearsay objection, thereby preventing appellant from testifying about threats made
to him by a witness. Specifically, appellant complains of the trial court's ruling sustaining
the State's hearsay objection to the following testimony:

[Appellant's counsel]: All right. Now, when was the three-way conversation
between- with Jocelyn, with Ms. Godine on the phone? When was that
conversation?


[Appellant]: Tuesday.


[Counsel]: The Tuesday before?


[Appellant]: Uh-huh.


[Counsel]: Were any threats made to you?


[Appellant]: Yes, sir.


[Counsel]: By who?


[Appellant]: Ms. Godine.


[Appellant]: Not saying what was said, but were the threats-- tell the jury--
threats to keep you away from your wife?


[Appellant]: Yes, sir.


[Prosecutor]: Your Honor, I'm going to object. He's telling him the answer
and it's still hearsay.


[Court]: Sustained.


 Appellant argues that to establish his "state of mind," it was important to establish
that the State's witness, Ms. Godine, had threatened him. The record reflects, however, 
that on cross-examination, Ms. Godine testified regarding the same three-way telephone
conversation:

[Appellant's counsel]: Now, there was-- on that three-way telephone you
were on the phone, too; weren't you?


[Ms. Godine]: Yes.


. . . .


[Appellant's counsel]: All right. Isn't that when you told him, "I will kick your
ass if I see you with her?"


[Ms. Godine]: I didn't say I would kick his ass if I seen him with her. I said I
would kick his ass if he came at me.


[Appellant's counsel]: Did you ever tell him, "I will kick your ass if I see you
talking to her?"


[Ms. Godine]: No, I did not.


In addition, appellant testified as to the following:


[Appellant's counsel]: What was it that made you think that you needed to
carry a gun this particular evening?


[Appellant]: Because I figured out her girlfriend was going to be with her
because it was a gay club.


[Counsel]: So you're going to the gay club?


[Appellant]: Yes, sir.


[Counsel]: Had you been threatened that she [Ms. Godine] would shoot you
back?


[Appellant]: Yes, sir.


[Prosecutor]: I'm sorry, I've going [sic] to have to object. He continues to
suggest the answer.


[Court]: Sustained.


[Appellant's counsel]: Why were you fearful of the girl?


[Appellant]: Because she threatened my life. 


Similarly, appellant testified:


[Appellant]: I bring the gun with me because the girl [Ms. Godine] threatened
me.


. . . .


[Prosecutor]: And you're getting that gun for what reason?


[Appellant]: Because her girlfriend threatened my life.


. . . .


[Prosecutor]: You never told Officer Gonzales that Natalie Godine had
threatened to kill you, did you?


[Appellant]: I don't remember.


[Prosecutor]: Is that what she said, "I'm going to kill you?"


[Appellant]: Yes, ma'am- no, she didn't say that. She didn't say that.


[Prosecutor]: What did she say?


[Appellant]: She said, "I will shoot you. If you don't leave my gal alone, I'm
going to shoot you."


 Although appellant complains that he was "prohibited from testifying about the
threats," he failed to make an offer of proof as to the testimony he would have provided if
allowed to testify regarding the threats. Accordingly, he failed to preserve any error. (22) 
Moreover, as shown, appellant was not prevented from testifying about the threats
allegedly made to him by Ms. Godine. We overrule appellant's second issue.

 In his third issue, appellant complains of the trial court's denial of his motions for
mistrial on three occasions, based on the State's allegedly improper cross-examination of
defense witnesses. (23) Specifically, appellant complains of one allegedly improper question
during the State's cross-examination of appellant's mother and two allegedly improper
questions during the State's cross-examination of appellant.

 Appellant first complains of a question directed to appellant's mother by the State. 
Shortly after shooting his wife, appellant went to his mother's house, where he shot himself
in the stomach. In questioning appellant's mother regarding appellant's self-inflicted
wound, the prosecutor asked, "But here he is how many months later and he's still alive,
right?" Appellant's counsel objected "to the relevancy of this line of questioning;" the trial
court sustained the objection. Counsel then requested an instruction that the jury disregard
the question and the trial court gave the instruction. Counsel then asked for a mistrial,
which the trial court denied. 

 Secondly, appellant complains of a question directed to him by the State during
cross-examination. The prosecutor had elicited testimony from appellant concerning his
failure to hold a steady job and his receipt of workers' compensation for an alleged on-the-job injury. The prosecutor asked, "Tell these people, if you were you're [sic] describing
yourself, Mr. Carson, would you describe yourself as an honest person?" Appellant's
counsel objected that the question was "improper" and the trial court sustained the
objection. Counsel asked for an instruction to disregard and the trial court gave the
instruction. Counsel then asked for a mistrial, which the trial court denied. Immediately
thereafter, the prosecutor asked appellant, "Do you tell the truth?" Appellant responded,
"Yes, I tell the truth."

 Finally, appellant complains of a question directed to him during the State's cross-examination. The prosecutor was questioning appellant regarding what he told Michael
Knighton, who witnessed the murder. The following exchange occurred:

[Prosecutor]: You said-- told Michael you knew you were going to get life for
the murder, right?


[Appellant]: No, ma'am. I kept saying, "I'm going home and kill myself."


[Prosecutor]: But you didn't, did you? 


Appellant's counsel objected to the "sidebar remarks;" the trial court sustained the
objection. Counsel asked for an instruction to disregard the comment and the trial court
provided the instruction. Counsel then asked for a mistrial, which the trial court denied. 

 The State argues that appellant has failed to preserve any error regarding the
allegedly improper questions because he has failed to provide appropriate authority in
support of his arguments. (24) We conclude, however, that it is unnecessary for us to
determine whether appellant preserved any error because in each instance, error, if any, 
was cured by the trial court's instruction to disregard. We presume the jury followed the
trial court's instructions to disregard the allegedly improper questions. (25) Here, the
comments were, respectively, (1) a sarcastic comment that despite his self-inflicted wound,
appellant was still alive and the victim was not, (2) an attack on appellant's credibility, and
(3) another sarcastic comment that appellant did not commit suicide. In each case, before
the offending question was answered, the trial court sustained appellant's objection and
instructed the jury to disregard the question. Moreover, at trial, two eyewitnesses testified
that they saw appellant shoot his wife. (26) We conclude that any prejudice resulting from the
complained-of questions was cured by the court's instruction to disregard. (27) We overrule
appellant's third issue.

 In his fourth issue, appellant complains of two instances of improper jury argument
during closing argument by the prosecutor. Appellant argues that even though the trial
court sustained his objection and instructed the jury to disregard the comments in each
instance, it nonetheless erred in denying his motions for mistrial in each instance.

 Specifically, appellant complains of the prosecutor's statement that "he [appellant]
wound up shooting his wife in the head. He said he never shot her-- " Appellant also
complains of the prosecutor's comment, "And you tell these people who have waited for
a very long time, you tell them--" Appellant argues that the first statement was "designed
to misrepresent the evidence at trial" and the second statement was "a plea to abandon
objectivity in the case." Appellant contends that both statements are so manifestly
improper and inflammatory that an instruction to disregard could not cure each statement's
prejudicial effect. (28) 

 The State argues that in both instances, appellant failed to preserve any error
because his objections were too general. In the first instance, appellant's counsel
objected, "Your Honor, I would object to that. There's no evidence to that. She is arguing
facts that- there was no evidence to this." In the second instance, appellant's counsel
objected, "I'm going to object. That's an improper argument, Your Honor. These people
'waiting a long time,' I'm going to object to that statement." 

 We agree with the State that appellant's "improper argument" objection in the latter
instance was too general to preserve any error. (29) With regard to appellant's objection that
"[t]here's no evidence to that," assuming, without deciding, that the argument was improper
and the objection was sufficiently specific to preserve error, we conclude that the trial
court's instruction to disregard cured any error. The prosecutor's comment was not so
prejudicial as to deprive the appellant of a fair and impartial trial. (30) We overrule appellant's
fourth issue.

 In his fifth issue, appellant contends the trial court erred in denying his motion for
mistrial following an outburst by the victim's mother. During the State's examination, after
the victim's mother was shown a picture of her daughter, the trial court stated that it
"need[ed] to excuse the jury," and the bailiff stated, "All rise." Immediately, the victim's
mother stated (to appellant), "Why did you do it? Why did you kill-- " Outside the
presence of the jury, appellant's counsel moved for a mistrial, which the trial court denied. 
Counsel did not request an instruction to disregard the comment. 

 When a party moves for a mistrial without first requesting an instruction to disregard,
our review is limited to whether the trial court erred in refusing to grant a mistrial. (31) We
may not reverse the judgment on appeal if an instruction to disregard would have cured
any error. (32) It is well-settled that spectator conduct or expression which impedes normal
trial proceedings will not result in reversible error unless an appellant shows a reasonable
probability that the conduct or expression interfered with the jury's verdict. (33) Here,
appellant has failed to show that the outburst by the victim's mother interfered with the
jury's verdict. (34) We overrule appellant's fifth issue.

Conclusion


 We affirm the trial court's judgment. 



 


 LINDA REYNA YAÑEZ,

 Justice





Do not publish. Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and filed 

this the 17th day of August, 2006.



 

 
1. See Tex. Pen. Code Ann. §§ 19.02, 12.32 (Vernon 2003). 
2. Young v. State, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004). 
3. Id. 
4. Id.
5. Id.
6. Id. 
7. Id
.
8. Id.
9. Id. at 70. 
10. Id. 
11. Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).
12. Moore v. State, 882 S.W.2d 844, 847 (Tex. Crim. App. 1994).
13. See Hawkins v. State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); Primes v. State, 154 S.W.3d 813,
814 (Tex. App.-Fort Worth 2004, no pet.). 
14. Hawkins, 135 S.W.3d at 77. 
15. See Ovalle v. State, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) (noting that ordinarily, a prompt
instruction to disregard will cure error associated with an improper question and answer); Primes, 154 S.W.3d 
at 815. 
16. Moore, 882 S.W.2d at 847. 
17. Hudson v. State, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984).
18. Willis v. State, 785 S.W.2d 378, 385 (Tex. Crim. App. 1989). 
19. See Tex. R. App. P. 33.1; Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). 
20. See Young, 137 S.W.3d at 69.
21. See Tex. R. App. P. 33.1; Cockrell, 933 S.W.2d at 89 (holding that a defendant's failure to object
to a jury argument or a defendant's failure to pursue to an adverse ruling his objection to a jury argument
forfeits his right to complain about the argument on appeal).
22. See Williams v. State, 936 S.W.2d 399, 404 (Tex. App.-Fort Worth 1996, pet. ref'd) (holding that
by failing to request permission to make a bill of exceptions and by failing to show what testimony would have
been if permitted, appellant failed to preserve error). 
23. Although appellant complains of four instances of improper questioning, he has identified only three. 
24. See Tex. R. App. P. 38.1(h).
25. Moore, 882 S.W.2d at 847. 
26. See Hawkins, 135 S.W.3d at 85 (noting trial court did not abuse its discretion in denying motion for
mistrial where error not egregious, trial court gave curative instruction, and evidence supported jury's
sentence). 
27. See Young, 137 S.W.3d at 69.
28. See Hawkins, 135 S.W.3d at 77. 
29. Hougham v. State, 659 S.W.2d 410, 414 (Tex. Crim. App. 1983) (holding objection, "We will object
to this line of argument, Your Honor," was insufficient to preserve error); Huggins v. State, 795 S.W.2d 909,
912 (Tex. App.-Beaumont 1990, pet. ref'd); Lowe v. State, 676 S.W.2d 658, 662 (Tex. App.-Houston [1st
Dist.] 1984, pet. ref'd). 
30. See Young, 137 S.W.3d at 69; Willis, 785 S.W.2d at 385. 
31. Young, 137 S.W.3d at 70. 
32. Id. 
33. Howard v. State, 941 S.W.2d 102, 117 (Tex. Crim. App. 1996) (citing Landry v. State, 706 S.W.2d
105, 112 (Tex. Crim. App. 1985); Ashley v. State, 362 S.W.2d 847, 851 (Tex. Crim. App. 1962)). 
34. See id.