

## NUMBER 13-05-785-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

**GILBERT RAMIREZ,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

### On appeal from the 404th District Court
### of Cameron County, Texas

---

## MEMORANDUM OPINION

**Before Justices Yañez, Garza, and Vela**
**Memorandum Opinion by Justice Vela**

A jury found appellant, Gilbert Ramirez, guilty of aggravated assault by causing

serious bodily injury[1] and assessed punishment at six years' imprisonment, plus a $10,000

fine. In five issues, appellant complains: 1) the trial court erred in admitting hearsay

---

[1]*See* TEX. PENAL CODE ANN. § 22.02(a)(1) (Vernon Supp. 2008).

testimony, 2) the evidence is legally insufficient to support the conviction, 3) the trial court erred in applying the law of self-defense to the facts, 4) the trial court failed to include an extraneous-offense instruction in the charge, and 5) trial counsel was ineffective. We affirm.

## I. Background

### A. State's Evidence

Rick and Hilda Perez, husband and wife, worked for a company called Helping Hands. Jessica Thompson was its director of operations, and she was appellant's girlfriend. On the morning of June 30, 2005, Jessica fired Rick and Hilda. Later that morning, Rick and Hilda went to the Casa Real Hotel where Helping Hands was holding an employee's meeting. Rick abruptly entered the meeting room and told the audience he and Hilda had been fired. As Rick was leaving, he told Jessica, "'I hope you never have to call the 911 the next time your boyfriend beats you up.'" While Rick was in the hotel's parking lot, appellant grabbed him from the back of his shirt. When Rick turned around, appellant punched him in the left eye. Hilda did not see the assault, but she did see Rick "on the ground . . . with blood gushing from his eye. . . ."

Los Fresnos police officer Juan Rodriguez arrived at the scene and saw Rick "bleeding profusely from his left side of his face." He saw a "large laceration on his left eye, upper left eye and lower part of his eye." He testified that Rick pointed out that he had been assaulted by appellant.

### B. Appellant's Evidence

Appellant testified that as Rick was leaving the meeting room, he thought he heard Rick tell Jessica, "'I hope you don't have to call 911 when you get beat up.'" This comment made appellant "concerned" and "scared." When Rick was outside on the sidewalk,

appellant asked him what he had said. Rick turned and looked at him. Appellant testified that Rick "was staring right at me and he took a step forward and made a quick motion with both hands to my neck area." Appellant stated that "[W]hen [Rick] reached for my neck area I swung and I hit him." He said that this was a "reaction" to the "aggression" and that he did not intend to hit Rick.

Jessica (Thompson) Ramirez, who at the time of trial was appellant's wife, heard Rick tell her, "'I hope you don't to have call [sic] 911 again . . . for your boyfriend beating you up.'" She followed appellant and Adam Thompson as they escorted Rick out the door. With respect to the assault, she testified that "Rick turned, Rick put his hands up and as soon as he put his hands up I saw my husband [appellant] hit him and he [Rick] lost his balance and he fell down. . . ."

Adam Thompson, a Helping Hands' employee, testified that he followed appellant and Rick as they left the meeting room. He stated that when he, appellant, and Rick were on the sidewalk, "[H]e [Rick] turned back. And when he turned back I'm not sure if he actually made contact with Mr. Ramirez [appellant] or not but his hands went up towards him and Mr. Ramirez struck Mr. Perez one time and then backed away." Adam Thompson did not see appellant grab Rick's shirt. He said that Rick turned around, took a step forward, raised his hands towards appellant, and reached towards him. At that point, appellant hit Rick in the face. Thompson stated that "Rick came at him [appellant] in a violent manner" and that Rick "did attack him [appellant]."

## II. Discussion

### A. Hearsay

In his first issue, appellant argues the trial court reversibly erred by admitting Officer Rodriguez's hearsay testimony into evidence. On direct-examination, defense counsel

3

made a hearsay objection when the prosecutor asked Officer Rodriguez what Rick had told him about the assault. The trial court overruled the objection, and Officer Rodriguez testified that:

> When I made contact with Mr. Perez, he told me he had been assaulted. Apparently, he was working for Helping Hands and he had been terminated from his employment and he had gone to this Casa Real Hotel where they were having a meeting there with his ex-employees and he just wanted to say good-bye to his employees. He met with employees there, said good-byes. As he is walking out, he makes a comment to Mr. Perez [sic] "I hope you don't have to call police again on your husband" referring to Jessica Thompson. As Mr. Perez walked out of the building and stuff, out of no reason Gilbert [appellant] just punched him from the rear.

We review a trial court's decision to admit evidence over objection under an abuse-of-discretion standard, and we will not reverse that decision absent a clear abuse of discretion. *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). A trial court abuses its discretion when the decision lies outside the zone of reasonable disagreement. *Id*.

Hearsay is a "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *See* TEX. R. EVID. 801(d). Hearsay statements are not admissible unless they fall within a recognized exception to the hearsay rule. TEX. R. EVID. 802. The excited-utterance exception to the hearsay rule applies to "[a] statement *relating* to a startling event or condition made while the declarant was under the stress or excitement caused by the event or condition." TEX. R. EVID. 803(2) (emphasis added).

In determining whether a hearsay statement is admissible as an excited utterance, the court may consider the time elapsed and whether the statement was in response to a question. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). However, it is not

4

dispositive that the statement is an answer to a question or that it was separated by a period of time from the startling event; these are factors to consider in determining whether the statement is admissible under the excited utterance hearsay exception. *Zuliani*, 97 S.W.3d at 596. The critical determination is "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event" or condition at the time of the statement. *Id*. In other words, a reviewing court must determine whether the statement was made "under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection." *Id*.

Here, it is clear that a startling event occurred. The record shows that Officer Rodriguez arrived at the scene and saw Rick "bleeding profusely from the left side of his face." He said that once Rick removed his hand, he saw "the large laceration on his left eye, upper left eye and lower part of his left eye." He asked Rick "exactly what was going on," and Rick "pointed out" that appellant had assaulted him. Thus, the evidence showed that Rick (1) "was still dominated by the emotions, excitement, fear, or pain of the event" or condition when he made the objected-to statements to Officer Rodriguez, and (2) these statements resulted from impulse rather than reason and reflection. The fact that Rick's statements were in the form of responses to questions does not make them inadmissible to this exception to the hearsay rule. Declarations made either in response to questioning or after some time had elapsed are only two factors in determining whether a statement is an excited utterance. *Id*. Neither factor alone is dispositive; the key is "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event." *Id*. Accordingly, the trial court did not abuse its discretion in admitting Officer Rodriguez's testimony. Even assuming the trial court erred in admitting Officer Rodriguez's

5

testimony, any error in the admission of the evidence was cured. In *Valle v. State*, the court of criminal appeals explained:

> To preserve error in admitting evidence, a party must make a proper objection and get a ruling on that objection. In addition, a party must object each time the inadmissible evidence is offered or obtain a running objection. An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection.

109 S.W.3d 500, 509 (Tex. Crim. App. 2003) (footnotes omitted); *see Leday v. State,* 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (explaining that "[o]ur rule . . . is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling"); *Willis v. State*, 785 S.W.2d 378, 383 (Tex. Crim. App. 1989) (noting that admission of inadmissible evidence is rendered harmless if the same or similar evidence is introduced without objection elsewhere during trial).

Here, appellant did not obtain a running objection. Therefore, any error in the admission of Officer Rodriguez's testimony was cured because the same or similar evidence came in elsewhere without objection.[2] *See Willis,* 785 S.W.2d at 383. Issue one

---

[2]After Officer Rodriguez gave the objected-to testimony, the prosecutor, without objection, continued to question him as follows:

Q.   When you say he [Rick] was struck from behind, was he struck in the back of his head or what do you mean?

A.   He was walking away, walking towards his vehicle, when Mr. Ramirez [appellant] was exiting the building[;] he, I guess, punched him from behind and struck him in the eye, the left side of the eye.

Q.   So who approached who?

A.   Mr. Ramirez walked up to Mr. Perez.

Q.   Mr. Perez is walking away?

A.   Yes, sir.

6

is overruled.

*B. Sufficiency of the Evidence*

In his second issue, appellant argues that the evidence was legally insufficient to sustain his conviction because the State failed to prove Rick suffered serious bodily injury. In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hampton v. State*, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319. The trier of fact is the sole judge of the weight and credibility of the evidence. TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim.

---

Q.    And Mr. Ramirez approaches?

A.    That's correct. Doesn't say anything to Mr. Perez, just strikes him. And strikes him once and hits him on the left side of his face.

After Officer Rodriguez identified appellant in the court room, the prosecutor continued as follows:

Q.    Is that the person [appellant] that you were told who did the striking?

A.    Yes, sir.

Q.    And who told you this?

A.    Mr. Perez.

* * * *

Q.    Now, you stated the victim was not welcomed at the [Helping Hands] meeting but do you know the specific facts of why he was not welcome?

A.    He was terminated from employment from Helping Hands and they were having their own private meeting and I believe Mr. Jack Keiger was the motivational speaker for the company and interrupted his meeting, . . . .

7

App. 2000). Thus, when performing a legal-sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We must resolve any inconsistencies in the evidence in favor of the judgment. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

*1. Aggravated Assault*

A person commits aggravated assault if the person commits an assault, and the person causes serious bodily injury to another. TEX. PENAL CODE ANN. § 22.02(a)(1) (Vernon Supp. 2008). The penal code defines serious bodily injury to be "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id*. § 1.07(a)(46).[3] There are no wounds that constitute "serious bodily injury" per se. *Hernandez v. State*, 946 S.W.2d 108, 111 (Tex. App.–El Paso 1997, no pet.); *see, e.g., Webb v. State*, 801 S.W.2d 529, 533 (Tex. Crim. App. 1990) (concluding that the necessity for surgery, alone, is insufficient to establish serious bodily injury); *Moore v. State*, 739 S.W.2d 347, 352 (Tex. Crim. App. 1987) (a knife wound, even though it may be caused by a deadly weapon, is not per se serious bodily injury). Whether an injury constitutes "serious bodily injury" must be determined on a case-by-case basis. *Moore,* 739 S.W.2d at 352; *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.–Houston [14th Dist.] 2006, pet. ref'd). The appellate court must evaluate each case on its facts to determine whether the injury was of a type that allowed the fact finder to determine that it met the definition of

---

[3]This definition stands in contrast to "bodily injury," which is required to maintain a conviction for assault. *See* TEX. PENAL CODE ANN. § 22.01(a)(1) (Vernon Supp. 2008). Bodily injury means physical pain, illness, or any impairment of physical condition. *Id*. § 1.07(a)(8).

8

serious bodily injury. *Hernandez*, 946 S.W.2d at 111.

Serious bodily injury may be established in the absence of a physician's testimony when the injury and its effects are obvious. *Carter v. State*, 678 S.W.2d 155, 157 (Tex. App.–Beaumont 1984, no pet.). A person who receives injuries is qualified to express an opinion about the seriousness of those injuries. *Hart v. State*, 581 S.W.2d 675, 677 (Tex. Crim. App. 1979).

*2. Serious Permanent Disfigurement*

Because the record does not show that Rick's injuries created a substantial risk of death,[4] the relevant inquiry is whether his injuries caused serious permanent disfigurement. The court of criminal appeals has long held that in assessing the sufficiency of the evidence to establish serious bodily injury, the question is the degree of risk of death that the injury caused, or the injury's disfiguring or impairing quality, as it was inflicted, not after the injury's effects had been ameliorated or exacerbated by other actions such as medical treatment. *Stuhler v. State*, 218 S.W.3d 706, 714 (Tex. Crim. App. 2007); *Brown v. State*, 605 S.W.2d 572, 575 (Tex. Crim. App. 1980),[5] *overruled on other grounds*, *Hedicke v. State*, 779 S.W.2d 837 (Tex. Crim. App. 1989).

[4]We note that in *Gonzales v. State*, 191 S.W.3d 741 (Tex. App.–Waco 2006, pet. ref'd), Gonzales hit the victim in the face, causing an orbital blow-out fracture. *Id*. at 753. The victim's treating physician testified that "the orbital fracture is a dangerous injury because it is caused by a 'pretty good force' and is [sic] places the victim at risk for head injury, brain injury, and potentially death." *Id*.

[5]In *Brown v. State*, the victim's nose was broken. 605 S.W.2d 572, 575 (Tex. Crim. App. 1980). Even though the broken nose was set, there was evidence that the injury would have caused permanent disfigurement and dysfunction absent the medical treatment. *Id*. The court of criminal appeals held that because the relevant issue in determining the degree of disfigurement is the damage caused by the wound when inflicted, and not after the effects of the injury are ameliorated or exacerbated by medical treatment, the evidence was sufficient to show serious bodily injury. *Id*.

*3. Analysis*

In this case, Rick testified that after appellant punched him in the left eye, he went to the hospital and received stitches for the lacerations. Later, he saw Dr. John Howe, an ophthalmologist, who ordered a CAT scan. Rick testified that Dr. Howe told him that his eye "had sunk and it's being pushed back." Rick also testified that the CAT scan showed he had "a blowout fracture back there in the eye and but he [Dr. Howe] needs to refer me to the ear nose and throat doctor to see if I need surgery for medical reasons. But he did recommend maybe if I want to have cosmetology surgery to raise the eyeball back up." When the prosecutor asked Rick, "[A]s a result of that blow, do you have disfigurement to your eye?", he answered, "Yes, sir." When the prosecutor asked Rick to explain what happened to his eye, he stated:

> Well, it was a laceration and just a lot of blood, nine stitches, cut the top and the part of the eyebrow here, six on the bottom and three stitches on the top, and according to my results I have a blowout fracture. Apparently, the bones in my eyes are real delicate and thin and as a result this eyeball if you look at it closely it's dropped. It's dropped and it's being pushed back, so.

When the prosecutor asked Rick to "Tell the jury what's wrong with your eye?", he stated: "Well, if you can tell the difference how this one has dropped slightly than this eye. And it's according to the results it's just being pushed back slightly, but it's dropped literally, and I found out when I see the ear nose specialist."

When the prosecutor asked Hilda Perez, "Does [Rick] have lasting injuries even today as a result of this incident?", she replied, "He has a scar and his eye is sunken." When the prosecutor asked her, "Is there disfigurement of the eye?", she said, "I can tell his eye is sunken." When asked what she meant by "sunken," she said, "[H]is eye closes

10

up a little later than this one and it's just, just a little like sunken in. It's not symmetrical. It's asymmetrical and he has a scar here and here."

Rick's medical records, offered into evidence by the State, indicate the following:

The left orbit demonstrates a blow out fracture of the floor. There is also medial orbital wall/lamina papyracea fracture. Some of the intraorbital fat is displaced into the roof of the left maxillary sinus, which shows mucosal thickening. Also, the left lobe is sunken as compared to the right. There is mild mucosal thickening in the ethmoids bilaterally. Nasoseptal deviation is seen to the left.

Thus, a rational jury could have found: (1) Rick suffered a blow-out fracture to his left eye; (2) as a result, the eye was sunken, asymmetrical, pushed back, and closed up "a little later" than the unaffected eye; (3) these injuries to Rick's eye were present at the time of trial; and (4) absent surgery, Rick's eye will remain sunken.

This evidence established the disfiguring and impairing quality of Rick's bodily injury at the time appellant punched him in the eye. When making a determination of serious bodily injury, the jury is free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence. *Eustis*, 191 S.W.3d at 884. A rational jury could have found beyond a reasonable doubt that the evidence established Rick had suffered serious permanent disfigurement. When viewed in the light most favorable to the verdict, the evidence is legally sufficient to support the conviction. *See Brown*, 605 S.W.2d at 575 (holding that broken nose was serious bodily injury because it would be disfigured and impaired if not treated); *Moore v. State*, 802 S.W.2d 367, 369 (Tex. App.–Dallas 1990, pet. ref'd) (concluding that sufficient evidence of serious bodily injury when victim's cheek bone was fractured in three places; surgery necessary to prevent significant cosmetic deformity). Issue two is overruled.

11

*C. Charge Error*

In issue three, appellant argues that the trial court erred by failing to include the law of self-defense in the jury charge. When evaluating charge error, we first determine whether there was error in the charge. *Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g). If so, "the next step is to make an evidentiary review . . . as well as a review of any other part of the record as a whole which may illuminate the actual, not just theoretical, harm to the accused." *Id*.

*1. The Law of Self-Defense*

The defendant bears the burden of production of some evidence that raises self-defense. *Zuliani,* 97 S.W.3d at 594; *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). Once the defendant produces this evidence, the State has the burden of persuasion to show the defendant did not act in self-defense. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.3d at 913-14. To meet this burden, the State is not required to produce evidence to disprove self-defense but only to prove its case beyond a reasonable doubt. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 913.

Section 2.03(d) of the penal code provides, "[i]f the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted." TEX. PENAL CODE ANN. § 2.03(d) (Vernon 2003). If a court submits an issue of the existence of self-defense to the jury, any flaw in the charge on self-defense amounts to error in the charge. *Barrera v. State*, 982 S.W.2d 415, 416 (Tex. Crim. App. 1998). In this case, because the charge instructed the jury on the law of self-defense, but did not apply the law to the facts as required by section 2.03(d), we conclude there was error in the charge. *See* TEX. PENAL CODE ANN. § 2.03(d); *Barrera,*

12

982 S.W.2d at 416-17.

*Harm Analysis*

The failure to include a reasonable-doubt instruction regarding self-defense is subject to a harm analysis under *Almanza*. *Barrera*, 982 S.W.2d at 417. When, as in this case, an accused complains of an unobjected-to error in the charge, "he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'–in short 'egregious harm.'" *Almanza*, 686 S.W.2d at 171. The error must "'go to the very basis of the case,'" "deprive the accused of a 'valuable right,'" or "'vitally affect his defensive theory.'" *Id*. at 172. The degree of harm, sufficiently serious to be called "egregious," is present whenever a reviewing court finds the case for conviction or punishment was actually made clearly and significantly more persuasive by the error. *Saunders v. State,* 817 S.W.2d 688, 692 (Tex. Crim. App. 1991). Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Ellison v. State,* 86 S.W.3d 226, 227 (Tex. Crim. App. 2002). The actual degree of harm is determined in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Almanza*, 686 S.W.2d at 171.

*a. Entire Jury Charge*

Here, the court (1) instructed and applied the law of aggravated assault to the facts of the case; (2) instructed the jury on the law of self-defense;[6] (3) correctly placed the

---

[6]With respect to the law of self-defense, the charge provided:

Upon the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree he reasonably believes the force is

13

burden on the State to prove each element of the offenses beyond a reasonable doubt;[7] and (4) instructed the jury that appellant was not required to prove his innocence or to produce any evidence. The application paragraph included the following instruction: "Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant not guilty."

The charge further instructed the jury that: "In the event you have a reasonable doubt as to the defendant's guilt after considering *all the evidence before you, and these instructions*, you will acquit him and say by your verdict 'Not Guilty.'" (emphasis added). There was no mention that appellant might have some burden of proof on any issue.

We presume that the jury followed the trial court's instructions. *Resendiz v. State*, 112 S.W.3d 541, 546 (Tex. Crim. App. 2003) (citing *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998)). We conclude that, despite the court's failure to instruct the jury as required by section 2.03(d), the charge, as a whole, adequately conveyed to the jury

---

immediately necessary to protect himself against the other person's use or attempted use of the unlawful force.

*See* TEX. PENAL CODE ANN. § 9.31(a) (Vernon Supp. 2008).

A person is justified in using deadly force against another if he would be justified in using force against the other in the first place, as above set out, and when he reasonably believes that such force is immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force, and if a reasonable person in defendant's situation would not have retreated.

*See* TEX. PENAL CODE ANN. § 9.32(a)(1), (a)(2), (a)(2)(A) (Vernon Supp. 2008)

By the term "deadly force" is meant force that is intended or known by the person using it to cause, or in the manner of its use or intended use is capable of causing, death, or serious bodily injury.

*See* TEX. PENAL CODE ANN. § 9.01(3) (Vernon Supp. 2008).

By the term "reasonable belief" as used herein, is meant a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant.

[7]Specifically, the charge stated: "The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant"

14

that it was required to acquit appellant if it had a reasonable doubt as to any element of the offense. *See Zuliani,* 97 S.W.3d at 594 (to meet its burden of persuasion to show defendant did not act in self-defense, State was required to prove its case beyond reasonable doubt).

*b. State of the Evidence and Contested Issues*

Appellant and his witnesses testified that Rick was the aggressor. On the other hand, Rick testified that appellant grabbed his shirt and punched him in the face. Officer Rodriguez testified that appellant struck Rick from behind. Thus, the State controverted appellant's self-defense claim. The jury's decision turned on credibility and, in our view, was not influenced by the error in the charge.

*c. Arguments of Counsel*

In its closing argument, the State focused on the seriousness of the injury, that appellant did not act in self-defense, the credibility of appellant's witnesses, and that there was "no evidence that he [Rick] was menacing or threatening the defendant's wife or the defendant's unborn baby."[8]

Defense counsel argued that, "[M]y client . . . was trying to protect himself and the people he cared for." He further argued, "What I do have to prove is my client's argument of self defense. I have a burden here, but it's not as high as theirs [the State's]. When you are reading the Charge look at paragraph six. This is important because this is what my client and all the witnesses have been telling you. They [the State] have offer [sic] no witness other than Rick Perez who said, "I saw him hit." Counsel further argued:

---

[8]Jessica (Thompson) Ramirez testified during the guilt-innocence stage that she was pregnant when the assault occurred.

15

He [appellant] didn't know what they [Rick and Hilda Perez] were going to do. This is the exact type of situation you hear about on TV all the time and he did something about it to make sure his friend and his family are safe including himself. Yes, and that's not selfish, it's self protection. . . .

You have to agree that he [appellant] did have the right to self defense. You are allowed to strike out before if you believe in your mind sincerely that you are in imminent danger, that's what the Charge says. It says what would a reasonable person do. . . .

You have enough evidence before you to find my client not guilty because of his self defense. His actions were reasonable; it was just one punch. . .

I don't have to prove the self defense by beyond a reasonable doubt. I don't have that burden, just what would a reasonable person do. We have different levels of definition for that. Just think about what would a person do put in that situation and that will guide you. If that's the case on any one of those three, you have to find him not guilty. . . .

Thus, counsel addressed the burden of proof on self-defense in closing argument.

### d. Other Relevant Information

Finally, the record does not reflect the jury was confused about the applicable burden of proof or about the State's burden to prove all elements of its case beyond a reasonable doubt.

### Application

Based on our review, appellant has not shown that the court's failure to instruct the jury as required by section 2.03(d) of the penal code affected the very basis of the case, deprived him of a valuable right, or vitally affected his defensive theory. Even though the charge did not include an application paragraph on the law of self-defense, it did instruct the jury on the elements of self-defense in the abstract. Appellant relied on self-defense as a defensive theory, and, beginning with jury selection and ending with closing argument, urged the jury to consider the issue of self-defense. Appellant and other witnesses testified

16

regarding his self-defense claims, and the State provided controverting testimony. Considering the jury was given a general instruction on the law of self-defense, and appellant discussed self-defense throughout the trial, we conclude the charge error at issue did not cause egregious harm. Issue three is overruled.

In issue four, appellant argues the court erred in failing to sua sponte include an instruction in the jury charge that the jury could consider evidence of extraneous offenses and bad acts only if the State proved the offenses and bad acts beyond a reasonable doubt. He argues the court should have included the instruction even though not requested.

During the State's cross-examination of Jessica Ramirez at the guilt-innocence phase, she testified that after the assault, she gave a written statement to the police. With respect to this statement, the prosecutor asked her:

> Q. Do you remember saying "I returned to the meeting and I saw Rick and Hilda hugging everyone and crying. They finished hugging and were being escorted out by hotel maintenance. When Rick turned to me and said I hope you don't to have [sic] call 911 again for your boyfriend who beats you up." Do you remember making that statement?
>
> A. As I said yesterday, yes. I remember him making that statement to me and that's how I filed my statement.
>
> Q. Is that statement true?
>
> A. Of course it's true, yes.

Appellant argues that a limiting instruction was needed because based upon this testimony, "the State prejudicially and purposefully brought extraneous bad acts" to the jury.

17

At the punishment phase of a non-capital case, the use of extraneous-offense evidence is governed by article 37.07 of the code of criminal procedure. *Delgado v. State*, 235 S.W.3d 244, 252 (Tex. Crim. App. 2007). Under this article, evidence of extraneous offenses—acts of misconduct not shown in the charging instrument—is admissible at punishment for any relevant purpose but only if the State can prove those offenses beyond a reasonable doubt. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp. 2008); *Delgado*, 235 S.W.3d at 252. This article is the "law applicable" to all non-capital punishment proceedings and must be included in the punishment charge regardless of whether it was requested. *Delgado*, 235 S.W.3d at 252.

Here, the punishment charge provided, in relevant part:

> The State has introduced evidence of extraneous crimes or bad acts other than the one charged in the indictment in this case. This evidence was admitted only for the purpose of assisting you, if it does, in determining the proper punishment for the offense for which you have found the defendant guilty. You cannot consider the evidence for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other acts, if any, were committed.

Because the punishment charge included the instruction required by article 37.07, section 3(a)(1), no error occurred. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp. 2008); *Delgado*, 235 S.W.3d at 252.

Article 37.07, section 3(a)(1) does not apply to extraneous offense evidence at the guilt-innocence phase of trial. *Delgado*, 235 S.W.3d at 252. Accordingly, a trial court must include the reasonable-doubt instruction in the guilt-innocence charge only upon request. *Id*. at 254. Here, no error occurred in the court's failure at guilt-innocence to instruct the jury on the State's burden of proof concerning extraneous offenses because appellant did not request the instruction. *Id*. Therefore, issue four is overruled.

18

*D. Ineffective Assistance of Trial Counsel*

In his fifth issue, appellant argues he received ineffective assistance of counsel at the punishment phase. To prove ineffective assistance of trial counsel, an appellant must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). First, he must show counsel's representation fell below an objective standard of reasonableness. Second, he must show there is a reasonable probability that, but for counsel's errors, the result of the trial proceedings would have been different. *See Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. To determine whether this test has been satisfied on appeal is to judge by the totality of the representation, not by isolated acts or omissions. *Jayne v. State*, 216 S.W.3d 839, 851 (Tex. App.–Corpus Christi 2006, no pet.). Generally, isolated failures by counsel do not constitute error in light of the sufficiency of the overall representation. *Id*. In order for an appellant to overcome this Court's presumption of reasonable professional assistance, "'any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.'" *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005) (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). The burden of proof is on the appellant, who must establish his or her claims by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998).

First, appellant argues trial counsel was ineffective because during the punishment phase, he failed to object to the State's re-offer of the evidence it had adduced at the guilt-innocence phase. If counsel's reasons for his or her conduct do not appear in the record

and there is "at least the possibility" that the conduct could have been grounded in legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective-assistance claim on direct appeal. *Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007). Here, trial counsel's reason for failing to object to the State's re-offer of evidence does not appear in the record,[9] and his conduct could have been part of a reasonable trial strategy. Without more, we must defer to counsel's decisions and deny relief. *See id*.

Second, appellant argues that during the punishment phase, trial counsel was ineffective for failing to object to the testimony of Michelle James, a case worker and special services supervisor for the Kleberg County Community Supervision and Corrections Department. The State called her to testify about appellant's involvement in two counts of aggravated assault against the same victim. She testified appellant was currently on eight years' deferred adjudication community supervision for these offenses.[10] With respect to the details of the offenses, Ms. James stated, in relevant part, that appellant "pulled at her [the victim's] shirt, tossed her onto the bed, proceeded to choke her, used his forearm as well during the attack, and he also slapped her in the face several times even eventually breaking her nose." Trial counsel did not object to this testimony.

On cross-examination, when counsel asked her, "How are you familiar with the previous case out of Kleberg County?", she replied, "I have the file in front of me. I have

---

[9]The appellate record includes appellate counsel's motion for new trial, alleging ineffective assistance of trial counsel. The motion included the affidavit of appellant's trial counsel. After a hearing, the trial court overruled the motion.

[10]One count was aggravated assault with a deadly weapon, and the other count was aggravated assault causing serious bodily injury. Ms. James testified, without objection, that the deadly weapon in Count 1 was appellant's "hands."

reviewed the file. It contains all the business records[11] that we have kept over the course of [appellant's] community supervision period."

Even though article 37.07, section 3(a) of the code of criminal procedure permits the jury to hear the details of a defendant's criminal history,[12] the statute does not allow these details to be based upon hearsay. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp. 2008). Because Ms. James's testimony concerning the details of the offenses was hearsay, and because trial counsel failed to object to this testimony, counsel's representation fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 694. However, despite the hearsay testimony, appellant only received a six-year sentence. This sentence fell within the low end of the punishment range for aggravated assault, a second-degree felony. We note that in closing argument, the State asked the jury to sentence appellant to no less than eight years in prison. Thus, appellant has failed to show there is a reasonable probability that, but for counsel's error, the result of the punishment trial would have been different. *See Strickland*, 466 U.S. at 694.

Third, appellant argues trial counsel was ineffective for failing to object to Ms. James's opinion about his character. When the State's attorney asked Ms. James, "[D]o you have an opinion as to the type of individual [appellant] is after he's been on probation with you?", she replied, "Certainly he has not been a model probationer. He has reoffended, he's violated the laws of this state and is currently on trial for that offense."

---

[11]The State did not offer these records into evidence.

[12]*See Davis v. State*, 968 S.W.2d 368, 373 (Tex. Crim. App. 1998) (holding evidence of an offense for which a defendant received deferred adjudication is admissible during the punishment hearing at a trial for another offense); *Hambrick v. State*, 11 S.W.3d 241, (Tex. App.–Texarkana 1999, no pet.).

Trial counsel did not object to this testimony.

On cross-examination, appellant's counsel elicited testimony[13] from Ms. James that appellant was not a good candidate for probation.

Article 37.07, section 3(a) provides:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, *an opinion regarding his character*, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp. 2008) (emphasis added).

Rule 602 of the Texas Rules of Evidence provides, "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." TEX. R. EVID. 602. Rule 701 states:

> [i]f the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

---

[13]Specifically, on cross-examination, counsel asked Ms. James:

Q.      [C]ould you tell us if you are saying that he is not a good candidate for probation?

A.      That's what I'm saying, yes, sir.

Q.      You said he was not a model person who was on community supervision and is that based on this new offense?

A.      Yes, sir.

22

TEX. R. EVID. 701.

The evidence shows that Ms. James had worked about twelve years for the Kleberg County Community Supervision & Corrections Department, that she currently worked there as a case worker special services supervisor, that she was familiar with appellant because he was currently on community supervision in Kleberg County, that she had made contact with appellant, that she supervised appellant's community-supervision officer, that she was familiar with appellant's case out of Kleberg County because she had reviewed his file, that she had a copy of the offense report regarding the case now before us, and that appellant had received anger-management courses. Because Ms. James's testimony is rationally based on her perception and is helpful to a determination of a fact in issue—appellant's punishment—we conclude it is in compliance with article 37.07, section 3(a)(1) and rule 602. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp. 2008); TEX. R. EVID. 602; *see also Sims v. State*, No. PD-1575-07, 2008 WL 2596950 *3 (Tex. Crim. App. July 2, 2008) (holding that character evidence in the form of opinion testimony may be admissible during punishment trial, even if the opinion testimony is based upon facts brought forth from extraneous-offense testimony); *Ellison v. State,* 201 S.W.3d 714, 722-23 (Tex. Crim. App. 2006) (stating that a probation officer may give opinion on defendant's suitability for probation). Thus, by failing to object to Ms. James's opinion about appellant's character, counsel's representation did not fall below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 694.

Fourth, appellant argues trial counsel was ineffective for failing to object to Rick's testimony about what the doctors told him about his injury. During the punishment phase, when the State's attorney asked Rick, "Do you feel that you have a permanent injury as a

23

result of the crime?", he replied:

> Yes, I do. I did confer with another medical doctor that didn't come up about having surgery and I was advised that it would be risky. No, it would not be risky, risky is the wrong word. That it would be—I'm taking a chance. Like, you know, maybe you should consider leaving it alone, you know, because who is to say if they do the surgery you are messing with your eye, they are all these nerves around, if they do anything wrong, cut it, you might—it might be worse for you in the long run if you do have the surgery, you know. Now I know the MRI specialist, the ophthalmologist told me that he wanted the ear, nose and throat doctor, ENT, to decide, have the final say so if I should have the surgery or not, so I meet with him he has a long waiting list, sometime in a couple of months and so we'll see from there. As far as the scar, I don't know. I've been told to have plastic surgery and again that's one of those things they could take away, but I don't know. Don't know what I'm going to do there.

Rick's testimony with respect to his injury was based in large part on hearsay. *See* TEX. R. EVID. 801(d). However, any error in the admission of this testimony is harmless because the same or similar evidence came in elsewhere without objection. *See Willis,* 785 S.W.2d at 383 (noting that admission of inadmissible evidence is rendered harmless if the same or similar evidence is introduced without objection elsewhere during trial). Because similar evidence, not based on hearsay was admitted without objection, appellant has failed to show there is a reasonable probability that, but for counsel's failure to object, the result of the punishment trial would have been different. *See Strickland*, 466 U.S. at 694.

Fifth, appellant argues trial counsel was ineffective for failing to object to Rick's opinion about appellant's punishment. When the State asked Rick, "[W]hat result would you like to see here as far as punishment of the defendant?", he replied, "If possible—I don't know how this works, I really don't. If possible, if [appellant] could be like on parole long enough to see his child be born, . . . . And I don't feel qualified to say; just the Court

24

to decide."  Counsel did not object to this testimony.

In *Fryer v. State*, the court of criminal appeals suggested that a victim's punishment recommendation may be admissible lay testimony under rule 701.  68 S.W.3d 628, 631 n.22 (Tex. Crim. App. 2002).[14]  Even assuming counsel's failure to object constituted deficient performance, appellant has failed to show how the deficient performance prejudiced the jury's determination of his punishment, especially in light of Rick's testimony that he did not "feel qualified to say" what punishment appellant should receive and that he wanted "the Court to decide."

Sixth, appellant argues trial counsel was ineffective for failing to request a limiting instruction at the time the State elicited evidence of an extraneous offense or bad act.  On re-direct examination during the punishment phase, the State's attorney questioned Rick about the comment he had made to Jessica regarding the 911 call.  Specifically, the State's attorney asked him:

Q.     Did you believe the statement to be true when you said it?

\* \* \* \*

A.     Yes.  From what I—I mean, I knew there was an incident where 911 had to be called between [Jessica] and [appellant] the month prior. As far as like did [appellant] actually physically hurt her, I really don't know.  I just knew there was an unfortunate incident among both of them.

\* \* \* \*

Q.     Well, there's been evidence earlier today that your statement was to Jessica "I hope you don't to have call 911 for your boyfriend beating

---

[14]In *Fryer*, the court stated, "Moreover, [Valerie] Silva was arguably qualified to give lay opinion testimony under Rule 701 concerning appellant's suitability for probation because she was acquainted with appellant and had first-hand knowledge of the commission of the offense." *Fryer v. State*, 68 S.W.3d 628, 631 n.22 (Tex. Crim. App. 2002).

25

you up" is that correct?

A.     Yes, ma'am.

\* \* \* \*

Q.     But when you said the statement, did you say it because you believed it to be true?

A.     Yes, ma'am.

Counsel neither objected to this testimony nor requested a limiting instruction at the time it was elicited. A party opposing evidence has the burden of objecting and requesting a limiting instruction at the introduction of the evidence. *Garcia v. State*, 887 S.W.2d 862, 878 (Tex. Crim. App. 1994). Because trial counsel failed to either object or request a limiting instruction when this testimony was introduced, his representation fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 694. Nevertheless, as previously discussed in issue four, the punishment charge included a limiting instruction. In addition, during the punishment phase, the defense called Jessica as a witness. With respect to the 911 call, she testified that she and appellant had an argument; that she got into the van; and that while appellant held onto the van's outside mirror, she backed out of the driveway and "drug him down the driveway with the van. . . ." She called 911 and "asked them to intercede so I wouldn't run over him with the car." Accordingly, Jessica's testimony showed the jury that Rick's statement that Jessica had called 911 because appellant had beat her up was inaccurate. Thus, appellant has failed to show there is a reasonable probability that, but for counsel's error, the result of the punishment trial would have been different. *See Strickland*, 466 U.S. at 694.

26

Seventh, appellant contends that during the punishment phase, trial counsel was ineffective for failing to object based on lack of notice[15] when the State introduced evidence of (1) the two aggravated-assault offenses from Kleberg County and (2) Jessica's 911 call. Appellant's contention presumes that an objection by trial counsel based on lack of notice would have succeeded in excluding this evidence. Furthermore, the appellate record does not show that trial counsel lacked notice that the State intended to introduce evidence of these extraneous offenses or bad acts at the punishment phase.

We note that the State filed its "NOTICE OF EXTRANEOUS OFFENSES OR BAD ACTS," in which it gave notice[16] of its intent to use the two aggravated-assault offenses from Kleberg County. The notice did not include the State's intent to use Jessica's 911 call. However, the fact that Jessica had called 911 was previously admitted into evidence at the guilt-innocence phase. Furthermore, Jessica's testimony at the punishment phase was that she did not call 911 because of appellant's violent behavior. Thus, counsel's failure to object to the lack of notice of the State's intent to introduce evidence of the 911 call could have been legitimate trial strategy in order to attack Rick's credibility. If counsel's

---

[15]Article 37.07, section 3(g) requires the State to give the defendant advance notice of its intent to introduce evidence of extraneous offenses at the punishment phase. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(g) (Vernon Supp. 2008).

[16]With respect to these two offenses, the notice stated:

Act: Aggravated Assault Causes Serious Bodily Injury
Date: On or About January 23, 2003
Location: Kleberg County, TX
Victim: Unknown
Cause No. Unknown

Act: Aggravated Assault with a Deadly Weapon
Date: On or About January 23, 3003
Location: Kleberg County, TX
Victim: Unknown
Cause No. Unknown

reasons for his or her conduct do not appear in the record and there is "at least the possibility" that the conduct could have been grounded in legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective-assistance claim on direct appeal. *Garza,* 213 S.W.3d at 348. Accordingly, appellant has failed to establish, by a preponderance of the evidence under the first prong of the *Strickland* test, that trial counsel's failure to object based on lack of notice constituted performance that fell below the objective standard of professional norms. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

Eighth, appellant argues trial counsel was ineffective for failing to object to the State's closing argument at the punishment phase. The complained-of remarks are:

> Yes, you know his [appellant's] wife is sad and his family is sad and I feel sorry for them, but I do not feel sorry for Gilbert Ramirez. . . . [I]n Kleberg County . . . [h]e broke the victim's nose, Ladies and Gentleman. You heard the probation officer. He broke her nose. . . . [H]is wife had to call 911 just this year on him because of his violent temper and now, not only did he break that lady's nose, . . . . This man has anger management problems.

The scope of proper jury argument is: (1) summation of the evidence; (2) any reasonable deduction from the evidence; (3) an answer to argument of opposing counsel; and (4) a plea for law enforcement. *Whiting v. State*, 797 S.W.2d 45, 48 (Tex. Crim. App. 1990). Reversible error results from improper prosecutorial argument only when argument is extreme, manifestly improper, injects new and harmful facts into the case or violates a mandatory statutory provision and is thus so inflammatory that its prejudicial effect cannot reasonably be cured by judicial instruction. *Hernandez v. State*, 819 S.W.2d 806, 820 (Tex. Crim. App. 1991).

28

Here, the remarks can be considered a reasonable deduction from the evidence presented or a plea for law enforcement. Even though the prosecutor's remarks that appellant "broke the victim's nose" are based upon Ms. James's hearsay testimony, appellant has failed to show there is a reasonable probability that, but for counsel's error in failing to object to the remarks, the result of the punishment trial would have been different. *See Strickland*, 466 U.S. at 694.

Ninth, we consider whether counsel was ineffective for failing to request a jury instruction that the jury could draw no adverse inferences from appellant's failure to testify at the punishment phase. Appellant testified during the guilt-innocence phase, but did not testify at the punishment phase. The trial court did not instruct the jury at the punishment phase on appellant's right to remain silent without any adverse inferences being drawn therefrom. There was no request from counsel for such an instruction nor was any objection to the charge made based on the instruction's omission.

Upon a defendant's request, a trial judge must instruct jurors that they may not draw any adverse inference from a defendant's failure to testify at the punishment phase. *Beathard v. State*, 767 S.W.2d 423, 432 (Tex. Crim. App. 1989). In the absence of a proper request or timely objection, the trial court is under no obligation to give the instruction and does not err in excluding the no-adverse-inference instruction in the punishment charge. *Michaelwicz v. State*, 186 S.W.3d 601, 624 (Tex. App.–Austin 2006, pet. ref'd). The decision to request a no-adverse-inference instruction is discretionary and a matter of trial strategy. *Calderon v. State*, 950 S.W.2d 121, 132 (Tex. App.–El Paso 1997, no pet.); *see also Michaelwicz,* 186 S.W.3d at 624 ("Defense counsel may not want the 'no adverse inferences' instruction given for a variety of reasons.").

Here, trial counsel's reasons for his actions or intentions do not appear in the record, and his conduct could have been part of a reasonable trial strategy. Without more, we must defer to counsel's decisions and deny relief. *See id*.

Lastly, appellant argues trial counsel was ineffective because, even though counsel filed an application for community supervision, counsel failed to prove he was eligible for community supervision. To be eligible for jury-recommended community supervision, the defendant bears the burden of proving that he or she has no prior felony convictions. *Speth v. State*, 6 S.W.3d 530, 533 (Tex. Crim. App. 1999).

During the guilt-innocence phase, appellant replied, "No, sir", when the State's attorney asked him if he had "ever been convicted of a felony in the last 10 years?" The State, at the punishment phase, re-offered the evidence adduced at the guilt-innocence phase. Accordingly, that evidence was before the jury at the punishment phase. Furthermore, at the punishment phase, Ms. James testified appellant "was not convicted of the two counts of aggravated assault" out of Kleberg County.

It is conceivable that counsel's decision to rely on the aforementioned testimony to prove appellant's eligibility for community supervision was a strategic choice. Because appellant was requesting the jury grant him community supervision in lieu of confinement, counsel may have thought if he put appellant on the stand, this would subject him to cross-examination, which would allow the State to prove evidence of extraneous offenses and even bad acts deemed relevant. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp. 2008). In closing argument, counsel implored the jury to grant community supervision. We have no record from which to evaluate the rationale of counsel in choosing the course of action that he did, and it is beyond our purview to second guess

30

counsel's strategy even if the choice of strategy was not successful. If there is at least the possibility that the conduct could have been legitimate trial strategy, then we must defer to counsel's decisions and deny relief on an ineffective-assistance claim on direct appeal. *Murphy v. State*, 112 S.W.3d 592, 601 (Tex. Crim. App. 2003). The charge gave the jury the option of giving appellant community supervision, and there is nothing in the record to show that the jury had a question about his eligibility for community supervision. Issue five is overruled.

## III. Conclusion

We affirm the trial court's judgment.

ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this 22nd day of January, 2009.