**Affirmed and Memorandum Opinion filed May 31, 2012.**



**In The**

# Fourteenth Court of Appeals

NO. 14-11-00206-CR
NO. 14-11-00207-CR
NO. 14-11-00208-CR
NO. 14-11-00209-CR
NO. 14-11-00210-CR
NO. 14-11-00211-CR
NO. 14-11-00212-CR

**RONNIE LEE ODOM, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 253rd District Court
Chambers County, Texas
Trial Court Cause Nos. 15502, 15503, 15504, 15505, 15508, 15509, & 15510**

## M E M O R A N D U M   O P I N I O N

Appellant was convicted on seven counts of sexual assault of a child. He challenges his conviction on the grounds that (1) he received ineffective assistance of counsel, (2) the trial court improperly commented on the weight of the evidence, and (3)

the trial court improperly conducted a gatekeeper hearing for an expert witness. We affirm.

## I. Background

Appellant rented a room from the stepfather of two boys, Nathan and David.[1] Appellant engaged in oral sex with Nathan and David and used his relationship with them to lure five other male victims to the house. Appellant used a barn behind the house as a clubhouse with couches, televisions, and pornographic material. Appellant was convicted of sexually assaulting seven male victims.

## II. Expert Witness

We will consider appellant's issues out of order. In his third issue, appellant contends the trial court committed fundamental error by improperly conducting a gatekeeper hearing for Dr. Lawrence Thompson. He contends that the trial court only determined the qualifications of the expert and not the reliability or relevancy of the opinions. Dr. Thompson is the director of therapy and psychological services at the Harris County Children's Assessment Center, and was the State's first witness. Prior to Dr. Thompson's testimony, appellant's trial counsel objected to his testimony as follows:

> Your Honor, this witness has been disclosed to be an expert witness, and I object to this witness's testimony until it can be determined that there is, first of all, it's relevant; and second, that whatever scientific opinions he's going to offer are, in fact, admissible under *Robinson* and *Daubert*.

Following appellant's objection, the State questioned Dr. Thompson on his qualifications. Dr. Thompson testified about his educational qualifications and his experience in individual and group therapy with children and families in which there is an allegation of child sexual abuse. Dr. Thompson's doctoral dissertation was based on a certain personality disorder as it related to child sexual abuse histories. Although not

---

[1] At trial, the parties used pseudonyms for the names of the minors. In this opinion, we will continue the practice using the same pseudonyms as those used at trial.

published, the dissertation was reviewed by professors at the University of Michigan,where Dr. Thompson obtained his doctorate.

Following this basic testimony, the State offered Dr. Thompson as an expert witness. Appellant's counsel further objected that the State failed to establish the relevancy of Dr. Thompson's testimony and the issues on which he would offer an opinion. The court then excused the jury and instructed the State to question Dr. Thompson to "determine whether or not he has the experience in each of these areas and whether he understands them and whether he thinks it might be helpful to explain those matters to the jury."

Outside the presence of the jury, Dr. Thompson testified that children who have been sexually abused often demonstrate a flat affect when describing the abuse. He further explained the symptoms of post-traumatic stress disorder and the fact that victims of sexual abuse often suffer from the disorder. He testified that some sex offenders engage in luring and/or grooming their victims. In other words, the offender uses specific techniques to attract vulnerable children, such as clubhouses, movies, and recreation. Dr. Thompson explained the concept of delayed outcry, which refers to an amount of time passing between an instance of child sexual abuse and the child sharing the sexual abuse with another person. Dr. Thompson testified that his knowledge of these characteristics qualified him to aid the jury and help them evaluate the evidence.

Following an extensive cross-examination by appellant's counsel, the court found the doctor, based on his qualifications, knowledge, skill, experience, training and education, qualified under Texas Rule of Evidence 702 as an expert in the field.

Before the jury, Dr. Thompson testified in general terms that it was possible that a child who was sexually abused would demonstrate a flat affect, and would show no emotion while testifying in court. He testified that victims of child sexual abuse often suffer from post-traumatic stress disorder. Dr. Thompson testified that the term "grooming" refers to "any behavior that a sex offender engages in to win over the trust of a child and use that trust in the service of sexually abusing them." He testified about the

3

various methods sex offenders may use to lure a child, and coerce them to participate in sexual abuse. He testified that victims of child sexual abuse experience higher rates of depression, anxiety disorders, and interpersonal difficulties than the majority of the population. Some children may not show any outward symptoms of abuse, but are emotionally conflicted. He also testified that delayed outcry is not uncommon in victims of child sexual abuse. Dr. Thompson did not testify specifically about any victims in this case; his testimony was strictly limited to generalities of child sexual abuse victims.

Appellant argues in this issue that the trial court "committed fundamental error" by improperly conducting the gatekeeper hearing pursuant to *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992). In *Kelly,* the Court of Criminal Appeals held that "under Rule 702, the proponent of novel scientific evidence must prove to the trial court, by clear and convincing evidence and outside the presence of the jury, that the proffered evidence is relevant." *Id.* at 573.

Dr. Thompson's methodology is not an appropriate case for employing the *Kelly* factors. Instead, the analysis set forth in *Nenno v. State*, 970 S.W.2d 549, 560 (Tex. Crim. App. 1998) *overruled on other grounds*, *State v. Terrazas*, 4 S.W.3d 720, 727 (Tex. Crim. App. 1999), is appropriate. *See, e.g.*, *Jensen v. State*, 66 S.W.3d 528, 542–43 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (applying *Nenno*'s "soft" sciences standard to testimony of child advocacy worker who testified about the difficulty of detecting sexual abuse of children by merely observing the relationship between the victim and perpetrator.).

Pursuant to *Nenno*, in determining whether Dr. Thompson's testimony was reliable, the trial court should have inquired about the following: (1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the expert's testimony is within the scope of that field; and (3) whether the expert's testimony properly relies on or utilizes the principles involved in the field. *Nenno*, 970 S.W.2d at 561. These questions are a "tailored translation" of the *Kelly* test outside of hard science. *Id.* at 561.

In applying the above factors to the trial court's gatekeeper hearing, we first note that the Court of Criminal Appeals has recognized research concerning the behavioral characteristics of sexually abused children as a legitimate field of expertise. *See Cohn v. State*, 849 S.W.2d 817, 818–19 (Tex. Crim. App. 1993); *Duckett v. State*, 797 S.W.2d 906, 914–17 (Tex. Crim. App. 1990). "Grooming" is a subject matter that may fall within that field. *Morris v. State*, No. PD-0796-10; 2011 WL 6057840 at *5 (Tex. Crim. App. Dec. 7, 2011) (not yet released for publication). Expert grooming testimony has been held to be useful to the jury. *Id.* at *9.

Dr. Thompson testified he specializes in the area of child sexual abuse. He testified about general principles in the field and that he uses those principles in his work. Dr. Thompson did not testify as to whether any particular victim suffered from the consequences of being sexually abused, nor did he opine on the issue of whether any of the victims were being truthful. He merely testified in general terms about the behavioral characteristics of sexually abused children.

Having reviewed the gatekeeper hearing, we find the trial court properly followed the standards set out in *Nenno,* rather than the *Kelly* reliability factors. Although the trial judge did not specifically state that the expert's information was relevant, he found the expert qualified to testify under Rule 702 which includes a relevancy component (the evidence will "assist the trier of fact to understand the evidence"). Appellant's third issue is overruled.

### III.  Ineffective assistance

In his first issue, appellant contends his trial counsel rendered ineffective assistance in that counsel (1) conducted an ineffective voir dire, (2) did not call character witnesses at guilt-innocence, (3) failed to adequately prepare appellant to testify, (4) failed to request a hearing on admissibility of extraneous offenses, (5) failed to request a limiting instruction on extraneous offenses, (6) failed to request a child's outcry statement hearing, (7) failed to lodge proper objections during the gatekeeper hearing, (8)

5

bolstered a prosecution witness by opening the door to victim impact testimony, and (9) failed to elicit mitigating punishment evidence.

In determining whether his trial counsel's representation was so ineffective that it violated appellant's Sixth Amendment right to counsel, we use the two-prong test laid out in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel, a defendant must show that (1) his counsel's performance fell below an objective standard of reasonableness; and (2) but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*

Whether this standard has been met is to be judged by the totality of the representation rather than by isolated acts or omissions of counsel. *Rodriguez v. State*, 899 S.W.2d 658, 665 (Tex. Crim. App. 1995). There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and we will sustain allegations of ineffectiveness only if they are firmly founded in the record. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Appellant has the burden to rebut this presumption by presenting evidence illustrating why trial counsel acted in the way that he did. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). In the absence of evidence regarding counsel's reasons for the challenged conduct, the record on direct appeal is simply undeveloped and cannot adequately reflect the alleged failings of trial counsel. *Freeman v. State*, 125 S.W.3d 505, 506 (Tex. Crim. App. 2003). When the record is silent as to trial counsel's strategy, as it is here, an appellant fails to meet his burden under the first prong of *Strickland*. *Lopez v. State*, 343 S.W.3d 137, 143–44 (Tex. Crim. App. 2011). While appellant filed a motion for new trial, it did not include an allegation of ineffective assistance of counsel. We have no record as to counsel's strategy as to any of the following complaints.

**A. Voir Dire**

Appellant contends that trial counsel failed to conduct a meaningful and complete voir dire by inappropriately making disparaging comments regarding his client and the

charges against him. Appellant contends the following comments were inappropriate during voir dire:

- This kind of thing (these charges) is not pleasant for anybody.
- Who else is disgusted by it (these charges)?
- It's so terrible. I can't stand the thought of it. I just wish he would go away.

Appellant further complains that his trial counsel failed to personalize or "humanize" him before the venire.

The purposes of voir dire are to (1) develop rapport between the officers of the court and the jurors, (2) expose juror bias or interest warranting challenge for cause, and (3) elicit information necessary to the intelligent use of peremptory challenges. *Dhillon v. State*, 138 S.W.3d 583, 587 (Tex. App.—Houston [14th Dist.] 2004, pet. stricken). Reviewing the entire voir dire examination, it appears that the purpose of trial counsel's comments was to develop a rapport with the jurors and potentially expose any bias against accused sex offenders. Nothing in the record shows that counsel's voir dire was the product of an unreasoned or unreasonable strategy, or that there was a fair probability that it led to either an unreliable guilty verdict or unjust punishment. In fact, counsel developed six cause strikes during his voir dire.

**B. Failure to Call Witnesses During Guilt-Innocence**

Appellant contends his trial counsel was ineffective for failing to call four punishment witnesses during the guilt-innocence phase of trial. Appellant claims that Sally and Bernice Odom, and Travis and Carlin Stives testified favorably at the punishment stage of trial, and would have testified favorably at guilt-innocence. During the punishment phase Sally and Amber Odom, appellant's mother and daughter, respectively, testified that appellant was a good father and to their knowledge had not mistreated his children. Travis and Carlin Stives were appellant's neighbors and testified that he had helped them with household chores and transportation during a hurricane.

7

To demonstrate prejudice from the failure to call witnesses, it must be shown that the witnesses would in fact have testified and that the testimony would have been favorable to the accused. *Hunnicutt v. State*, 531 S.W.2d 618, 625 (Tex. Crim. App. 1976), *overruled on other grounds by Hurley v. State*, 606 S.W.2d 887 (Tex. Crim. App. 1980).

Appellant relies primarily on two cases, *Wright v. State*, 223 S.W.3d 36 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd), and *Ex Parte Briggs*, 187 S.W.3d 458 (Tex. Crim. App. 2005), to support his proposition that trial counsel's failure to call these witnesses at guilt-innocence amounts to ineffective assistance of counsel. Both *Wright* and *Briggs* are distinguishable. In both cases, the courts found counsel's assistance was ineffective for failure to call an expert witness. In *Briggs*, trial counsel told his client he could not fully investigate medical records or consult with an expert until he had been paid additional funds. 187 S.W.3d at 466. The Court of Criminal Appeals noted that counsel's action was not a strategic decision, but an economic one. *Id.* at 467. In *Wright*, the court concluded that exculpatory evidence in the therapist's notes, expert testimony about deviations from standard protocol reflected in the notes, and expert testimony concerning false allegations of sexual assault in connection with divorce proceedings constituted powerful evidence that would have supported appellant's defensive theory, and the failure to use this evidence constituted ineffective assistance of counsel. 223 S.W.3d at 44–45.

In this case, the record does not reflect counsel's strategy for failure to call the witnesses at guilt-innocence. None of these witnesses could testify to the facts surrounding the alleged acts of sexual abuse. The record does not reflect whether the witnesses were available during guilt-innocence, or that their testimony would have been favorable to appellant. Appellant has not overcome the presumption that, under the circumstances, the decision not to call these witnesses might be considered sound trial strategy.

### C. Failure to Adequately Prepare Appellant to Testify

Appellant argues that his trial counsel did not adequately prepare him to testify in his own defense. At trial, appellant alleged that the victims he was accused of abusing were "plotting against him." He admitted sleeping in the same bed with one of the victims, and testified that the victims lied about the abuse because he stopped giving them "luxury" items. Appellant argues that it appears he admitted giving the victims cigarettes, alcohol, and pornography, then was "sliced and diced" on cross-examination.

The record does not reflect counsel's strategy for appellant's testimony, nor does it reflect appellant's preparation for trial. Without a fully developed record, we cannot speculate on appellant's strategy. *See Lopez*, 343 S.W.3d at 143–44

### D. Failure to Request a Hearing on Admissibility of Extraneous Offenses

Appellant argues that he received ineffective assistance of counsel because his trial counsel failed to request a hearing outside the presence of the jury on the admission of extraneous offenses. Appellant claims counsel should have requested a hearing prior to the State's introduction of evidence that appellant provided alcohol and pornography to the victims.

The State responds by arguing that a Rule 404(b) objection would not have been proper because the extraneous-act evidence was admissible pursuant to article 38.37 of the Code of Criminal Procedure. The article provides, in relevant part, as follows:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:
>
> (1) the state of mind of the defendant and the child; and
>
> (2) the previous and subsequent relationship between the defendant and the child.

*See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2.

In this case, the evidence that appellant provided alcohol and pornography to the victims to lure or groom them falls within the type of evidence allowed under article 38.37. The record reflects that the extraneous acts were admissible under article 38.37 to show how appellant lured his victims. *See Hinojosa v. State*, 995 S.W.2d 955, 957–58 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

Thus, because article 38.37 applies to evidence of the extraneous acts, a Rule 404(b) objection by defense counsel would have been properly overruled. Trial counsel is not ineffective for failing to make futile objections. *See Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004); *Edmond v. State*, 116 S.W.3d 110, 115 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

Appellant also asserts that his trial counsel should have objected to the extraneous-act evidence based on Rule of Evidence 403. Indeed, even if the evidence was admissible under article 38.37, the trial court had "a nondiscretionary obligation to weigh the probative value of the evidence against the unfair prejudice of its admission" when a defendant objects to the admission of extraneous offense evidence based on Rule of Evidence 403. *See Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd). To show ineffective assistance of counsel for failure to object, an appellant must show that the trial court would have committed error in overruling the objection. *Ex parte White*, 160 S.W.3d at 53. Appellant has not shown that the trial court would have erred had it overruled a Rule 403 objection.

The relevant factors in determining whether the prejudice of an extraneous offense substantially outweighs its probative value include: (1) how compellingly the extraneous-offense evidence serves to make a fact of consequence more or less probable—a factor that is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense; (2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way"; (3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and (4) the force of the proponent's

need for this evidence to prove a fact of consequence. *Mozon v. State*, 991 S.W.2d 841, 846–47 (Tex. Crim. App. 1999).

Whether evidence is admissible under Rule 403 is within the sound discretion of the trial court. *Montgomery v. State*, 810 S.W.2d 372, 386, 389 (Tex. Crim. App. 1990). In this case, the factors of the balancing test weigh in favor of admitting the extraneous-act evidence because it was probative of the relationship between appellant and the victims. Appellant allowed the victims access to alcohol and pornography as a way of bringing them into the group, lowering their inhibitions, and stimulating them sexually, which aids in explaining how he was able to persuade such a large number of children to participate in sex acts and have them keep it a secret for such a long time. The trial court would not have committed error in overruling a Rule 403 objection; therefore, appellant has not shown he received ineffective assistance of counsel for failure to make a Rule 403 objection.

Appellant further complains of trial counsel's failure to request a limiting instruction on extraneous offenses. The record reflects the following instruction in the court's charge:

> EXTRANEOUS OFFENSE
>
> You are instructed that if there is any testimony before you in these cases regarding the defendant's having committed offenses other than the offenses alleged against him in the indictments in these cases, you cannot consider said testimony or any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed. and even then you may only consider the same in determining the intent of the defendant, if any, in connection with the offense, if any, alleged against him in the indictments in these cases, and for no other purpose.

Appellant does not specify what further instruction trial counsel should have requested. Because the charge contained a limiting instruction on extraneous offenses, we do not find counsel's failure to request such an instruction prejudicial.

11

### E. Failure to Request Outcry Hearing

Appellant complains that two outcry witnesses, Jennifer Brown and Robyne Koch, testified without a request for a hearing to determine the reliability of their testimony. Jennifer Brown is a therapist with a foster home adoption agency. She testified that Nathan made an outcry to her during an interview. She testified that "something happened" to him more than one time in January and February 2009. Robyne Koch is a detective with the city of Mont Belvieu. Koch testified that Samuel's mother approached her and asked that Koch talk with Samuel. At trial, Koch testified that Samuel reported that appellant had performed oral sex on him. Appellant's timely hearsay objection was overruled.

Appellant contends that his trial counsel rendered ineffective assistance in failing to request an outcry hearing before Brown and Koch were permitted to testify about the outcries made to them. Article 38.072 provides an exception to the hearsay rule by allowing evidence of an "outcry statement" by a child complainant 14 years old or younger. *See* Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a). When a defendant is charged with certain offenses against a child under the age of 14 or a disabled individual, article 38.072 allows into evidence the complainant's out-of-court statement so long as that statement is a description of the offense and is offered into evidence by the first adult the complainant told of the offense. *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011). The relevant question at an Article 38.072 hearing is whether, based on the time, content, and circumstances of the outcry, the outcry is reliable. *Id.* at 487.

We find trial counsel did not render ineffective assistance with regard to the two outcry witnesses. First, with regard to Koch's testimony, trial counsel lodged a timely objection to the hearsay evidence. A hearsay objection raised immediately before the outcry witness begins to testify as to what the child told her is sufficient to preserve the defendant's complaint about the failure to hold an article 38.072 hearing. *Long v. State*, 800 S.W.2d 545, 548 (Tex. Crim. App. 1990); *Laredo v. State*, 194 S.W.3d 637, 640 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). Further, any error in the admission

of outcry testimony was rendered harmless because both Nathan and Samuel testified to the act of the abuse. Admission of inadmissible evidence is harmless error if other evidence that proves the same fact that the inadmissible evidence sought to prove is admitted without objection at trial. *Willis v. State*, 785 S.W.2d 378, 383 (Tex. Crim. App. 1989), *cert. denied*, 498 U.S. 908 (1990).

## F. Failure to Lodge Proper Objections to the Gatekeeper Hearing

Because we have determined the trial court conducted a proper gatekeeper hearing, we do not find that counsel was ineffective for failure to object to the hearing.

## G. Cross-examination and Failure to Call Witnesses at Punishment

Appellant argues that trial counsel's inadequate cross examination of a witness during the guilt/innocence phase of the trial brought out inadmissible victim impact evidence for the jury's consideration. Appellant further argues that trial counsel failed to present sufficient mitigating evidence at punishment.

The cross examination of witnesses and the decision whether to present witnesses is largely a matter of trial strategy. *See Rodd v. State*, 886 S.W.2d 381, 384 (Tex. App.— Houston [1st Dist.] 1994, pet. ref'd). An attorney's decision not to present particular witnesses at the punishment stage may be a strategically sound decision if the attorney bases it on a determination that the testimony of the witnesses may be harmful, rather than helpful, to the defendant. *See Weisinger v. State*, 775 S.W.2d 424, 427 (Tex. App.— Houston [14th Dist.] 1989, pet. ref'd) (holding that it is trial counsel's prerogative, as a matter of trial strategy to decide which witnesses to call).

While cross-examining one of the victims, trial counsel asked about the victim's need to talk with a counselor. The victim explained that family members had noticed that he was "acting differently" after the abuse and that he chose to speak with a counselor rather than explain the abuse to a family member. Appellant complains that this testimony opened the door to victim-impact evidence. Trial counsel, however, did not

13

open the door to victim-impact evidence as the State had already briefly questioned the victim on direct examination about contacting a counselor.

During the punishment phase of trial, appellant called four witnesses, Sally and Amber Odom, appellant's mother and daughter, and Travis and Carlin Stives, appellant's neighbors. They testified to appellant's character and his willingness to be a helpful neighbor.

In questioning a victim about counseling and in presenting only four witnesses during the punishment phase, we do not find that counsel's "conduct was so outrageous that no competent attorney would have engaged in it." *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). Because the record is silent as to trial counsel's strategy, appellant failed to meet his burden under the first prong of *Strickland*. *See Lopez*, 343 S.W.3d at 143–44. Appellant's first issue is overruled.

## IV.  Comment on the Weight of the Evidence

In his second issue, appellant contends the trial court committed fundamental error by commenting on the weight of the evidence after the jury returned its verdict on punishment, but before the court ruled on the State's motion to stack the sentences.

After the jury's punishment verdict was read in open court, but before the State's oral motion to cumulate sentences, the trial judge stated to the jury in open court, "I applaud your decision. I think y'all made a good decision, and I appreciate it." Appellant claims the trial court's remark violated article 38.05 of the Texas Code of Criminal Procedure. Article 38.05 provides:

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

Tex. Code Crim. Proc. Ann. art. 38.05.

A trial court must refrain from making any remark calculated to convey to the jury its opinion of the case. *Brown v. State*, 122 S.W.3d 794, 798 (Tex. Crim. App. 2003). The trial court improperly comments on the weight of the evidence if it makes a statement that implies approval of the State's argument, indicates disbelief in the defense's position, or diminishes the credibility of the defense's approach to the case. *Simon v. State*, 203 S.W.3d 581, 590 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Applying this standard, we first examine whether the challenged remarks, made by the trial judge during appellant's jury trial, were improper comments on the weight of the evidence.

The court made a comment after the jury's verdict on punishment, but before ruling on the State's motion to stack appellant's sentences. At the moment the trial court made its comment, the jury had fulfilled its obligation and any improper comments would have no effect on the verdict previously rendered. Because the trial court did not improperly influence the jury by its comment, we overrule appellant's second issue.

The judgment of the trial court is affirmed.


/s/     Tracy Christopher
Justice


Panel consists of Justices Boyce, Christopher, and Jamison.

Do Not Publish — TEX. R. APP. P. 47.2(b).